STATE *v.* BARNEY ROBY.

October Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed December 7, 1909.

*Criminal Law—Breach of the Peace—Assault and Battery—*
*    Harmless Error — Exhibiting Articles to the Jury — Evi-*
*    dence—Admissibility—Opinion   Evidence — Instructions—*
*    Defences—Consent.*

Where, in a prosecution for an assault and battery, after the jury were impaneled but before they were sworn, the state's attorney placed on the floor before them a sack containing several articles, some of which he took from the sack and laid on the floor in their sight, and later offered to show that, at the time of the assault, they were thrown, by persons in the company of respondent, at the house wherein was the person assaulted, which evidence was excluded, and the court instructed the jury to give no consideration to the fact that they had seen the sack and its contents, the respondent was not harmed by the transaction.

In a prosecution for assault and battery, where, during the examination of the person assaulted, the state's attorney produced a piece of eaves spout and asked her whether in going around to the front of the house, as she had testified she did, she saw the respondent do anything to the spout, which question was excluded, the production of the spout in the sight of the jury before it was offered in evidence was harmless to the respondent.

The irrelevancy of admitted evidence is not ground of reversal, where the evidence is manifestly harmless.

In a prosecution for assault and battery, testimony of the person assaulted that, when she was in the front part of the house after the assault, which had been committed in the rear thereof, she recognized another person out in front of the house, was so wholly without significance that it could not have harmed the respondent.

In a prosecution for assault and battery, which the evidence tended to show the respondent committed while dressed in woman's clothes, and his counsel in his opening statement said it was in a spirit of fun that the respondent dressed in that manner and went to the house where the alleged assault was committed, testimony of a boy who saw the assault that the respondent tried to hit him was admissible to disprove the claim that the respondent was acting only in a spirit of fun.

A party will be confined in the Supreme Court to the objection stated below.

It was not the expression of an opinion, but a plain statement of fact, for a witness, in answering a question as to how the respondent tried to catch hold of the alleged assaulted person, to illustrate with his arms and hands, saying that the respondent tried to catch her as illustrated.

In a prosecution for assault and battery, where the respondent claimed that they visited the house where the alleged assault was committed in a spirit of fun, without intending to do any harm, error does not appear in allowing that claim to be disproved by the testimony of a person who lived in the house that immediately after the assault she heard a window break in her bedroom, it not appearing that the respondent was not connected with such breaking.

An assault and battery is committed by intentionally laying hands on another without his consent and against his will.

In a prosecution for assault and battery, where the respondent denied that he committed the assault, and claimed that he visited the

house where the alleged assault was committed in a spirit of fun, and where the court instructed the jury that if the respondent laid his hands on the alleged assaulted person in fun, and it was not against her will, he would not be guilty, but, if he did so against her will and without her consent, he would be liable, and that it was for the jury to find whether he did it in fun, and that the respondent would be liable "if he laid hands on her as the State claimed," it was not error to refuse to modify the charge by saying that it would be an assault if he laid his hands upon her without her consent, in an angry, revengeful, rude, insolent, or hostile manner; as the respondent denied that he laid hands upon her and only suggested that if he did so, it was in fun.

INFORMATION for breach of the peace. Plea, not guilty. Trial by jury at the April Term, 1909, Essex County, *Miles,* J., presiding. Verdict, guilty; and judgment and sentence thereon. The respondent excepted. The opinion states the case.

*Harry B. Amey* and *Herbert W. Blake* for the respondent.

It was error to allow the sack and its contents to be exhibited to the jury before the same was offered in evidence; and that was not cured by excluding the offer, and instructing the jury to disregard what they had seen. 1 Wig. Ev. §1155; 1 Taylor, Ev. §557; Scintillae Juris, 58; *Small* v. *Haskins,* 29 Vt. 187; P. S. §1981; *Bartlett* v. *Cabot,* 54 Vt. 242; *State* v. *Meader,* 54 Vt. 130; *State* v. *Bernham,* 56 Vt. 445; *Hardwick Savings Bank & Trust Company* v. *Drenan,* 72 Vt. 438.

*George L. Hunt,* State's Attorney, for the State.

By not offering further to challenge the jury, and by not objecting to the jury being sworn, or proceeding with the trial, the respondent waived any irregularity there may have been in exhibiting the sack and its contents in the sight of the jury. *Whitcher* v. *Peacham,* 52 Vt. 242; *Badger* v. *State,* 69 Vt. 217; *McKinstry* v. *Collins,* 74 Vt. 147; *Jennett* v. *Patten,* 78 Vt. 69; *Scott* v. *Moore,* 41 Vt. 205.

ROWELL, C. J.    This is an information for a breach of the peace by assaulting and beating one Anna DuBois.

Immediately after the jury were impaneled but before they were sworn, the presiding judge left the bench and the courtroom for a few minutes, the assistant judges remaining on the bench. While the presiding judge was gone, the State's attorney had brought into the courtroom a sack containing a piece of stovewood and an assortment of old iron, and placed it on the floor near and in sight of the jury, where a portion of the contents of the sack was taken out and laid on the floor before the presiding judge returned. This was done in the presence of the respondent and his counsel, and that the articles might be handy when wanted by the State to offer in evidence. When the presiding judge returned, the jury were sworn and then the respondent objected to what had been done, and was allowed an exception thereto. No objection was made to swearing the jury nor to their trying the case. Later in the trial the State offered some of said articles in evidence, and to show that they were thrown at the house in which Mrs. DuBois was, about the time of the assault, by persons in company with the respondent. The evidence was excluded, and the respondent excepted to the production of the articles before the jury. The court charged the jury to give no consideration to the fact that the sack and its contents were brought to their view in the manner stated.

Mr. Taylor says that though evidence addressed to the senses, if judiciously employed, is obviously entitled to the greatest weight, care must be taken not to press it beyond its legitimate extent. 1 Taylor, Ev. 10th ed., §557. Mr. Wigmore says that the objection to such evidence seems to be twofold; (1) that there is a natural tendency to infer from the mere production of a material object, and without further evidence, the truth of all that is predicated of it; and (2) that the sight of deadly weapons or of cruel injuries tends to overwhelm reason and associate the accused with the atrocity without sufficient evidence; that the objection in its first phase may be at least partly overcome by requiring that the object be properly authenticated before or after production; but that the objection in its second phase cannot be entirely overcome even by express instructions by the court; but that it is doubtful whether the necessity of thus demonstrating the methods and results of crime should give way to this possibility of undue prejudice; that no doubt such an effect may occasionally in an

extreme case be produced, and no doubt the trial court has a discretion to prevent an abuse of the process, but that in the vast majority of instances in which such objections are made they are frivolous, as there is no reason for apprehension, and accordingly that such objections have almost invariably been repudiated by the courts. 2 Wig. Ev. §1157.

Applying this doctrine, we think it clear that there is no reason for apprehending that the respondent was harmed by what took place.

During the examination of Mrs. DuBois, the State's attorney produced a piece of an eaves spout, and asked her whether, in going around to the front of the house, as she said she did, she saw the respondent do anything to the spout. The question was excluded, and the respondent excepted to the act of the State's attorney in producing the spout before the jury before it was offered in evidence and the offer ruled upon. This objection may well be classed with the "vast majority of instances" that Mr. Wigmore says are frivolous because they afford no reason for apprehension.

Mrs. DuBois was allowed to testify that when she was in the front part of the house she recognized another person out in front of it. This was excepted to, and is now urged as error because the thing testified to was not in issue nor relevant to the issue. But irrelevancy alone does not vitiate if it can be said that the testimony did not harm the excepting party, and the testimony complained of was so entirely without significance that it could not have harmed the respondent. *State* v. *Bean,* 77 Vt. 384, 60 Atl. 807; *State* v. *Plant,* 67 Vt. 454, 32 Atl. 237, 48 Am. Rep. 821.

The State's evidence tended to show that the house of Fred Contin, where the alleged assault was made, was about forty rods from Thomas Lapoint's house, from which the respondent and three other men came on that occasion; that early in the evening of that day, Mrs. DuBois was standing in the back door of the Contin house, where she lived, watching her two little brothers put the hens into the barn some distance away, when she saw four men leave the vicinity of the Lapoint house and in company approach the Contin house; that the respondent was one of the men, and was dressed in woman's clothes, and that when near the Contin house he left his companions in

the road and came to the back porch of the Contin house, climbed the porch steps, struck Mrs. DuBois in the chest and pushed her back against the door frame, hurting her arm and frightening her, and at the same time said: "Clear the road you damned bitch"; that thereupon she called to the boys, who came running and met the respondent as he was retreating down the porch steps; that the respondent started after the boys, who circled around him and entered the front door of the house; that Mrs. DuBois ran through the house to the front door and threw hot water at the respondent who was in the front yard swinging his arms in a threatening manner, whereupon she went back into the house.

The respondent's counsel, in his opening statement to the jury before any evidence was received, said that the respondent's purpose in going to the Contin house dressed in woman's clothes was to call on Mr. Contin in a spirit of fun, with the intention of doing no harm whatever, but to see what the result would be between Contin and his wife, who was extremely jealous of her husband.

The State called one of the boys as a witness, who was examined through an interpreter, who was asked to have the witness describe what the respondent did when he met the boys as they came from the barn. The respondent objected that the question called for evidence of an assault on the boys, which was not charged in the information. But the court overruled the objection, for that the evidence called for was a circumstance surrounding the immediate act charged, and on that ground, and not to show an assault on the boys, the witness was told to answer, and said, "He tried to hit them." The State's attorney said the answer might be stricken out, but the court allowed it to stand, and allowed the respondent an exception. But the answer, if not admissible for the purpose for which it was received, was admissible as tending to disprove that the respondent went there in a spirit of fun, with the intention of doing no harm whatever, as he claimed, for it tended to render that claim improbable.

During the examination of the same witness the interpreter was asked to have him show just how the respondent tried to catch hold of his sister as he said. The interpreter then spoke to the witness, who made some reply, which he illustrated with

his arms and hands, and then the interpreter gave his answer thus: "He said he tried to catch her like that"—illustrating with his arms and hands—"and his sister ran away and he tried to catch her." The respondent objected to "that characterization." But the court allowed it to stand, and the respondent excepted. It is objected that the answer was inadmissible as not tending to show an assault on the prosecutrix but on a third person, and as being opinion evidence. The first objection was not made below and therefore cannot be made here. *Massucco* v. *Tomassi*, 80 Vt. 186, 67 Atl. 551. Treating the second objection as within the objection below, it is not well taken, for the characterization was not opinion but a plain statement of fact from which alone the jury could draw an intelligent conclusion.

This disposes of the exception to the testimony of Mrs. Contin that the respondent started to run after her sister to catch her, referring to the occasion testified to by the boy.

Mrs. Contin was also allowed to testify that after the assault, and after the prosecutrix, her daughter, threw the hot water, she heard the window break in her bedroom. It does not appear what the objection was below, but it is now urged that there was nothing to connect the respondent with the breaking of the window; that the information does not charge him with it; and that it was testimony as to an entirely irrelevant transaction, and gave the jury a chance to infer that it had some connection with the dangerous weapons they had seen, and that both the weapons and the event had some connection with the respondent. But though the information does not charge the respondent with breaking the window, it does not appear that there was nothing to connect him with it, but on the contrary it would seem that there was something, for the court charged, that as bearing on the intent with which the respondent went there, and as answering his evidence that he went there in a spirit of fun, the State had shown the jury some testimony, as the court remembered it, of an instance when the respondent hurled something through the window of the house, and that the jury had a right to consider that as bearing upon his story, whether he went there in a spirit of fun or of war or mischief. No exception was taken to this part of the charge, and no suggestion of misapprehension of the testimony on the part of the

presiding judge appears to have been made, and so it must be said that error on this point does not appear.

The court confined the State for conviction to what took place on the back porch of .the Contin house, and charged that the question was whether the respondent there laid his hands on the prosecutrix as the State's witnesses testified he did, and made the case turn on the way the jury found that question, and told the jury that the tendency of the respondent's testimony was to deny that assault and battery. The court supplemented its charge by saying that it had been suggested that it had charged that if the respondent laid his hands on the prosecutrix even in fun, he committed an assault and battery and would be liable, but that the court did not intend to charge that way, but said that it charged, "if he laid his hands on her as the State claimed," and that the court did not understand when it charged that way that the respondent claimed that if he did lay his hands upon her it was in fun, but that the respondent's counsel now claimed that, and so the court charged that if that was so, and it was not against her will, he would not be guilty, but if he laid his hands upon her against her will and without her consent, he would be liable; but that it was for the jury to find whether he did it in fun and mirth—whether it was a matter of sport between them. The respondent objected to this portion of the charge, and requested the court to qualify it by saying that it would be an assault and battery if he laid his hands upon her without her consent in an angry, revengeful, rude, insolent, or hostile manner. But the court omitted to qualify as requested, allowed the charge objected to to stand, and the respondent excepted.

The respondent contends that now the whole argument resolves itself into a discussion of what constitutes a criminal assault and battery, and that it was important for the trial court to differentiate between what would sustain a civil action for assault and battery and what is necessary to make a criminal assault and battery, which was not done; that it is one of the vital principles of the law of torts that as affecting the liability itself, the question of intent does not arise; but that as affecting criminal liability, the question of intent does arise. Counsel illustrate this last proposition by supposing that instead of touching the prosecutrix in an angry, revengeful, rude, insolent,

or hostile manner, the respondent in passing through a door had accidentally hit her and knocked her down, in which case, it is said, he would not be criminally liable.

But the court was not called upon to differentiate as contended, for the respondent did not claim that he accidentally nor unintentionally laid his hands upon the prosecutrix, nor admit that he touched her at all, even in fun, though he claimed at the close of the charge that if the jury found he did lay his hands upon her, he did it in fun. That was the reason or excuse he suggested for laying his hands upon her if he did at all, which he practically denied, and this suggestion the court gave him the full benefit of by charging that if it was true, he was not guilty. Without this, he suggested no reason nor excuse for laying his hands upon her, and therefore if he did lay them upon her, he must be taken to have done it intentionally, and if without her consent and against her will, it was unlawful and a battery. 2 Bish. New Crim. Law, §72; 3 Bl. Com. [*120].

The request to qualify the charge was unsound, for though one consents to be beaten, it is no justification when it is a matter that concerns the peace and dignity of the State. *Willey* v. *Carpenter,* 64 Vt. 212, 23 Atl. 630; *Commonwealth* v. *Collberg,* 119 Mass. 350, 20 Am. Rep. 328; Cooley, Torts, 163.

*Judgment that there is no error in the proceedings of the county court; that the respondent take nothing by his exceptions; and that execution of the judgment and sentence be done.*