STATE *v.* DONALD DESO.

May Term, 1938.

Present: POWERS, C. J., MOULTON, SHERBURN, BUTTLES and
STURTEVANT, JJ.

Opinion filed October 4, 1938.

4

*P. C. Warner* and *Leon D. Latham, Jr.,* for the respondent.

*Lawrence C. Jones,* Attorney General, and *K. Paul Fennell,* State's Attorney, for the State.

SHERBURNE, J.   The first count of the information in this case charges that "Donald Deso * * * on * * * at * * * did then and there unlawfully, wilfully and feloniously assault Michael A. Mangini and then and there rob, steal and take from the said Mangini, Thirty-two ($32.00) Dollars, of the lawful money of the United States, then and there the subject of larceny, then and there being armed with a dangerous weapon, to. wit, a revolver, with intent to maim the said Mangini, if he, the said Mangini then and there had resisted * * *." The second count is for aiding and abetting Warren Rich in the commission of this offense.

The State's evidence tended to show that the respondent and Warren Rich returned together from St. Albans to Burlington, and that on the way they planned to hold up a store at the latter place.   After walking around the streets of Burlington they went into one store and made a purchase, but not liking the looks of the proprietor, withdrew without attempting a holdup. They then walked along the street until they came to the variety store of Michael Mangini, which they decided would be a good one to hold up before they entered.   At this time Deso had an empty revolver in his pocket and a box of cartridges for it, while Rich had some brass knuckles he had gotten from Deso and an empty automatic revolver but no cartridges for it.   They went into the store and bought some ice cream sodas.   While they were sitting down and eating these, Deso asked Rich who was

going to hold up the proprietor, and Rich said he would. Rich then got up and asked Mangini for some cigars, and when Mangini went to get them Rich stepped in behind him and stuck his revolver in his ribs and told him to "stick them up," while Deso went to the cash register and took thirty dollars. Before going into the store Rich had decided to use his revolver as a club but had not told Deso of this intention, and when Mangini resisted he would have hit him with it, but Mangini was too quick for him and he didn't have a chance. They both fled and were later apprehended.

After the State had rested the respondent moved for a directed verdict, whereupon, at the court's suggestion, the State was permitted to enter a *nolle prosequi*. The respondent excepted to the failure of the court to rule upon his motion for a directed verdict and to permitting the State to enter a *nolle prosequi*.

It has long been the law of this State, as at common law, that where an indictment or information charges an offense which includes within it another lesser offense or one of lower degree it is sufficient to prove so much of the charge as proves the respondent to have been guilty of a substantial crime, therein stated, although not to the full extent charged against him. So if the State fails to prove the greater offense, but proves the less, the respondent may be convicted of the less. *State* v. *Scott,* 24 Vt. 127; *State* v. *Thornton,* 56 Vt. 35; *State* v. *Albano,* 92 Vt. 51, 55, 102 Atl. 333, and cases cited in these cases. An indictment or information in such a case charging the highest degree includes the lower degrees. *State* v. *Albano, supra,* and cases cited.

The information charges an offense under P. L. 8400, which provides: "A person who assaults another and feloniously robs, steals and takes from his person money or other property, the subject of larceny, being armed with a dangerous weapon, with intent if resisted to kill or maim the person robbed, shall be" punished in a certain manner. In the following sections penalties are provided for robbery by force, or by assault and putting in fear, by one not armed with a dangerous weapon; for an assault armed with a dangerous weapon with intent to rob; and an assault not so armed with intent to rob. By P. L. 2441, a

person tried for robbery may be convicted of larceny if the jury finds that offense proved.

■■ The requirement of taking from the person as used in the statute is satisfied by a taking from the presence, as at common law. *Com.* v. *Homer,* 235 Mass. 526, 127 N. E. 517; *Wood* v. *State,* 98 Fla. 703, 124 So. 44; *Crawford* v. *State,* 90 Ga. 701, 17 S. E. 628, 35 A. S. R. 242; *People* v. *O'Hara,* 332 Ill. 436, 163 N. E. 804; *State* v. *Calhoun,* 72 Iowa, 432, 34 N. W. 194, 2 A. S. R. 252; *People* v. *Cabassa,* 249 Mich. 543, 229 N. W. 442; *Turner* v. *State,* 1 Oh. St. 422; *Hill* v. *State,* 145 Ala. 58, 40 So. 654. A thing is in the presence of a person in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession. *Com.* v. *Homer, supra.*

■■ The respondent makes no question but that the allegations in the information are sufficient to charge a statutory crime, but claims that the allegations are insufficient to sustain a conviction for a simple assault, robbery or larceny, or for aiding and abetting therein. As no faults are pointed out, we need not seriously consider such claims. Although the information may be informal, for instance, it fails to allege ownership of the money, an omission which is amendable, *State* v. *Nelson,* 91 Vt. 168, 171, 99 Atl. 881, we may safely assume that if the information is sufficient to charge the highest offense, as admitted by the respondent, it also includes all the lower degrees, down to and including simple assault.

■■ Upon the evidence the respondent could have been convicted of all the degrees of robbery and attempt to rob which we have mentioned, except the highest, and of larceny, or he could have been found guilty of simple assault only, as he was guilty of a battery as well as an assault when his confederate stuck his revolver into Mangini's ribs. *State* v. *Roby,* 83 Vt. 121, 129, 74 Atl. 638. Under the provisions of P. L. 8741 and the rules laid down in *State* v. *Orlandi,* 106 Vt. 165, 171, 170 Atl. 908, there is no question but that the evidence made out a case against the respondent on both counts of the information, both as a principal and as aiding and abetting.

Assuming that there had been no battery, and laying aside the intent to use the revolver as a club, we do not endorse re-

spondent's contention that pointing an unloaded revolver at a person can under no circumstances constitute an assault because the aggressor does not have the present ability to inflict injury upon the person assailed. It is true that many courts so hold, and it is frequently declared in criminal statutes defining assault that it must appear that the assailant had the present ability to commit the contemplated injury. Some confusion has arisen in the authorities because of the failure of the courts to draw a distinction between simple assault and felonious assault. It is to be doubted whether the rule thus adopted that an assault is not committed where one aims an unloaded gun at another is strictly in accord with the principles governing assault and battery, and in most instances an examination of the statutes of the particular jurisdictions following the rule stated above will disclose that an assault cannot be committed unless the assailant has the ability to consummate the act. In those jurisdictions where it is the rule that an assault cannot be committed unless the assailant has the actual ability to consummate the act, the state of mind of the party assailed is not taken into consideration. 4 Am. Jur., Assault and Battery, § 14.

In our opinion the true rule is stated by Mr. Bishop in his work on Criminal Law (vol. 2, 8th ed., § 32) in the following language: "There is no need for the party assailed to be put in actual peril, if only a well-founded apprehension is created. For his suffering is the same in the one case as in the other, and the breach of the public peace is the same. To illustrate—if, within shooting distance one menacingly points at another with a gun, apparently loaded yet not in fact, he commits an assault the same as if it were loaded. There must be some power, actual or apparent, of doing bodily harm, but apparent power is sufficient. In the instance we are referring to, the person assaulted is really put in fear." This position is supported by *Com.* v. *White,* 110 Mass. 407; *Price* v. *United States,* (9th Cir.) 156 Fed. 950, 15 L. R. A. (N. S.) 1272; *State* v. *Barry,* 45 Mont. 598, 124 Pac. 775, 41 L. R. A. (N. S.) 181; *Beach* v. *Hancock,* 27 N. H. 223, 59 A. D. 373; *State* v. *Shepard,* 10 Iowa, 126; *State* v. *Smith,* 2 Humph. (Tenn.) 457; *State* v. *Daniel,* 136 N. C. 571, 48 S. E. 544, 103 A. S. R. 970. As said in *Com.* v. *White, supra,* "It is not the secret intent of the assaulting party, nor the undisclosed

fact of his ability or inability to commit a battery, that is material; but what his conduct and the attending circumstances denote at the time to the party assaulted. If to him they indicate an attack, he is justified in resorting to defensive action. The same rule applies to the proof necessary to sustain a criminal complaint for assault. It is the outward demonstration that constitutes the mischief which is punished as a breach of the peace.''

Our attention is called to *Clark* v. *Downing*, 55 Vt. 259, 45 A. R. 612, a civil case for assault and battery, where it is said: ''If the party threatening the assault have the ability, means, and apparent intention to carry his threat into execution, it may in law constitute an assault. The disposition accompanied by a present ability to use violence, has been held to amount to an assault.'' In that case the facts were held sufficient to show an assault under that definition, and there was no occasion to go further and apply the rule of apparent power to injure.

The respondent also insists that the revolver was not a dangerous weapon because unloaded. In the ordinary case of an aggravated assault a dangerous weapon is a weapon which in the way it is used or attempted to be used may endanger life or inflict great bodily harm. *Price* v. *United States, supra.* In this sense it is obvious that an unloaded revolver is not a dangerous weapon when used as a firearm only. Whether or not a revolver used as a bludgeon is a dangerous weapon depends upon its size, weight and the manner of using it, as it is nothing more than a piece of steel of the same size, weight and shape. 4 Am. Jur., Assault and Battery, § 36; *Hilliard* v. *State*, 87 Tex. Cr. Rep. 15, 218 S. W. 1052, 8 A. L. R. 1316; *Skidmore* v. *State*, 43 Tex. 93.

But in cases of robbery and assault with intent to rob, the offense committed or attempted to be committed is independent of the assault and may as well be accomplished by intimidation as by force, and, as said in *McNamara* v. *People*, 24 Colo. 61, 48 Pac. 541, ''The intimidation of a person may be just as effectually accomplished by an apparent, as well as an actual, ability to inflict the menaced injury; and therefore the reason of the rule adopted in the cases holding proof of actual ability necessary is not applicable to a case of this character.'' In that case the defendant was convicted of an assault with intent to

rob, ''being then and there armed with a certain deadly weapon, to wit, a rifle gun,'' but the state offered no proof that the pistol was loaded; and the court distinguished between cases wherein the alleged assault was made toward the perpetration of an offense that could not possibly be consummated unless the gun was loaded, such as murder or bodily injury, and cases like the present, in which the offense attempted to be committed is independent of the assault, and may as well be committed by intimidation as by force. There is also much merit in the rule adopted in California, where it is held that an unloaded gun or pistol is a dangerous weapon within the meaning of a statute denouncing robbery, or assault with intent to rob, while armed with a dangerous weapon. Thus in *People* v. *Eagan,* 77 Cal. App. 279, 246 Pac. 337, the defendant was convicted of robbery in the first degree; and the court held that an unloaded pistol was a dangerous weapon within the meaning of the statute, saying only that ''it is a matter of common knowledge that in committing robbery, pistols are frequently used as bludgeons rather than as fire-arms.'' See also *People* v. *Shaffer,* 81 Cal. App. 752, 254 Pac. 666; and *People* v. *Freeman,* 86 Cal. App. 374, 260 Pac. 826.

We do not think, however, that the greatest offense charged, the intent to maim if resisted, was proved. Under the common law mayhem was ''the violently depriving another of the use of such of his members as may render him the less able in fighting, either to defend himself, or to annoy his adversary. And therefore the cutting off, or disabling, or weakening a man's hand or finger, or striking out his eye or foretooth, or depriving him of those parts the loss of which in all animals abates their courage, are held to be mayhems. But the cutting off his ear, or nose, or the like, are not held to be mayhems at common law; because they do not weaken but only disfigure him.'' 4 Bl. Com. 205. On the two following pages Blackstone goes on to show how the common law crime began to be extended by statute. He mentions statutes about cutting out the tongue and cutting off the ear, and then tells of the Coventry Act, 22 & 23 Car. II., c. 1, which was occasioned by an assault on Sir John Coventry in the street, and slitting his nose. ''By this statute it is enacted, that if any person shall of malice aforethought, and by lying in wait, unlawfully cut out or disable the tongue, put out an eye,

slit the nose, cut off a nose or lip, or cut off or disable any limb or member of any other person, with intent to maim or disfigure him; such person, his counsellors, aiders, and abettors, shall be guilty of felony without benefit of clergy.''

Our statute on maiming, P. L. 8390, follows the Coventry Act, and reads: ''A person who, with malicious intent to maim or disfigure, cuts out or maims the tongue, puts out or destroys an eye, cuts or tears off an ear, cuts or slits or mutilates the nose or lip, or cuts or disables a limb or member of another person, and a person privy to such intent who is present aiding in the commission of such offense, shall be imprisoned,'' etc. Under a similar statute in Massachusetts it is held that the word ''maim'' is used in the popular sense of mutilating, and not as synonymous with the technical word ''mayhem.'' *Com.* v. *Newell*, 7 Mass. 245. Webster's New Inter. Dict. (2nd ed.) gives as one definition of the word ''maim'': ''To mutilate or seriously wound or disfigure; disable.'' We are satisfied that our statute includes within the offense all malicious mutilating, serious wounding, disfiguring or disabling of a person in respect to the parts, organs and members referred to, without regard to their combative importance.

While this automatic revolver was an instrument of considerable weight and, used as a bludgeon, probably could have been wielded in such manner as to have inflicted an injury within the meaning of our statute, it was not in fact so used, and we do not think that because Rich had decided to use it as a club, and would have hit Mangini with it had Mangini not been too quick for him, warrants a finding beyond a reasonable doubt that Rich intended to maim Mangini. He may have intended merely to stun or bruise him. In this view of the matter it is unnecessary to discuss the point raised by the respondent that as Rich had not communicated to Deso his intent to use the revolver as a club, the common intent to maim was not shown.

It has long been the law of this State that the State's attorney may, at any stage of a trial before verdict, enter a *nolle prosequi* by permission of the court. As said in *State* v. *Roe*, 12 Vt. 93, 109: ''The court, in granting permission, will exercise its judicial discretion. If the case appear a clear one for the respondent, the court will not give the permission, as he

is entitled to a verdict of acquittal. If the case appear against the accused, he can have no objection to a *nolle prosequi.*" See also *State* v. *I. S. S.,* 1 Tyler 178; *State* v. *Champeau,* 52 Vt. 313, 317, 36 A. R. 754; *State* v. *Bissell,* 106 Vt. 80, 91, 170 Atl. 102. And a *nolle prosequi* so entered is not a bar to another indictment or information for the same offense. *State* v. *Champeau, supra; State* v. *Bissell, supra.*

Where one offense is a necessary element in, and constitutes a part of, another, and both are in fact but one transaction, an acquittal or conviction of one is a bar to a prosecution for the other. *State* v. *Smith,* 43 Vt. 324; *State* v. *Locklin,* 59 Vt. 654, 10 Atl. 464; *State* v. *Albano, supra.* Hence the court could not have directed a verdict of not guilty as to the highest offense charged without barring further proceedings upon the lesser offenses. As said in *State* v. *Bissell, supra,* "It would certainly be an anomaly in legal procedure to have a directed verdict and an issue submitted to the jury concerning matters alleged in the same count." It is clear that in a situation like the present, where the evidence shows one or more of the lesser offenses proved but fails to sustain the highest offense, the course for the court to pursue when it submits the case to the jury is to withdraw the highest offense from their consideration, and instruct them that they can only find the respondent guilty of the lesser offenses.

Until there is a final verdict of guilty or not guilty of some one of the offenses charged, there can be no bar to a further prosecution for any offense charged, from the lowest to the highest. Thus in *State* v. *Bradley,* 67 Vt. 465, 32 Atl. 238, we held that when a respondent, upon an indictment for murder in the first degree, is convicted of murder in the second degree, and gets a new trial upon exceptions, he can be put on trial again for murder in the first degree; and that the verdict of murder in the second degree was only an implied acquittal of murder in the first degree, which had nothing to sustain it when the verdict was set aside. Our Constitution contains no provision against double jeopardy. *State* v. *Felch,* 92 Vt. 477, 484, 105 Atl. 23. In that case we held that due process of law was not infringed by G. L. 2598, then in force, giving a right of exception to the State in a criminal case equal in all respects

12

to that possessed by the respondent, and sustained the exceptions of the State after a verdict of acquittal, and remanded the case for a new trial.

The reason why the court permitted the entry of a *nolle prosequi* does not appear. It may have been because of a feared defect in the information, or the court and State's attorney may have been unduly disturbed as to the proper course to pursue when the evidence failed to sustain the highest charge. Whatever the reason, we have no doubt but that the court exercised its judicial discretion.

We hold that a further prosecution for the same offense, or any part thereof, is not barred, and find no error.

*Exceptions overruled.*

Chief Justice Powers, having deceased, took no part in the decision of this case.