## State of Vermont v. Bruce Wixon

[114 A2d 410]

February Term, 1955.

Present: **Sherburne, C. J., Cleary, Adams and Chase, JJ., and Hulburd, Supr. J.**

Opinion Filed May 3, 1955.

*John S. Burgess*, State's Attorney, for the State.

*Alban J. Parker* for the respondent.

**Hulburd, Supr. J.** This is a prosecution for breach of the peace in Bellows Falls Municipal Court under V. S. 47, §8458. There was a trial by jury and at the conclusion of the State's evidence the respondent moved for a directed verdict. This was granted. The State excepted to the granting of the respondent's motion and the cause was passed to this Court before final judgment as provided for by V. S. 47, §2456.

The complaint charges in substance that the respondent disturbed and broke the public peace by tumultuous and offensive carriage, by quarreling with and threatening one Ira Rozell and by using profane and abusive language and by pouring beer over the household furnishings of one Bellrose in the presence of other persons then and there gathered.

Viewing the evidence in the light most favorable to the State, the jury could reasonably have found the following facts. On the day in question toward nightfall, the respondent, accompanied by two other young men, came to the home of Mrs. Ethel Bellrose in Saxtons River, Vermont. Mrs. Bellrose was not at home at the time, nor was any other adult. Her two daughters, however, were there. They were Janette and

Shirley. Janette was eighteen years old and Shirley but fourteen. The respondent and his companions came into the Bellrose home carrying opened bottles of beer. They talked with the girls, drank their beer, and soon discovered that a fourth boy, Sonny McClair, had come to the Bellrose home before they had and had fallen asleep on a bed in one of the adjoining rooms. The respondent thereupon proceeded to pour beer over Sonny as he slept, soaking the bed in the process. In addition, the respondent poured some of his beer on Janette's blouse. Because of the turn things were taking, Janette went upstairs and sought the assistance of one Ira Rozell. Rozell was a tenant who lived with his family in an apartment on the second floor over the Bellrose living quarters. At Rozell's approach, the respondent and his two companions withdrew, got into their car and drove away. After going but two or three houses down the street, however, the respondent got out of the car and came back up the road to a point opposite the Bellrose home. He shouted at Rozell who was still standing on the lawn in front of the Bellrose house, to come out into the road if he wanted to fight. Rozell stayed where he was and told the respondent not to come into the yard. Angered by this, the respondent called out to Rozell, "I will cut your damn throat," and he brandished the beer bottle he had in his hand. The respondent continued, repeating his threat, and at this Rozell "started thinking." At this juncture a passerby happened along and inquired: "What's going on, a fight?" Rozell availed himself of the opportunity of asking the passerby to get a police officer. By the time the police officer had arrived, the respondent had left the scene without further incident, and this time he did not return.

 This Court from time to time has had occasion to comment on the nature of a breach of the peace. As has been said, V. S. 47, §8458 should not be taken as a definition of the crime; it is a statute which defines certain modes of committing the offense, but it does not purport to be exhaustive in its enumeration. *State* v. *Boyd*, 91 Vt 88, 89, 99 A 515. The crime may be committed in other ways than those specified in the statute, the term breach of peace being generic and including all violations of the public peace or order. *State*

v. *Christie*, 97 Vt 461, 463, 123 A 849, 34 ALR 577. "The public peace is that sense of security and tranquility so necessary to one's comfort, which every person feels under the protection of the law; and a breach of the peace is an invasion of the protection which the law thus affords." *State* v. *Mancini*, 91 Vt 507, 511, 101 A 581, 583.

■ Since the term embraces an endless variety of acts and incidents, the attending circumstances become an important element in determining whether the conduct complained of amounts to a breach of the peace. Thus, loud, profane language called out on the highway in the presence of passersby tends to disturb the quiet, repose and tranquility essential to the rest and comfort of well ordered society and comes within the definition of "tumultuous and offensive carriage" as used in the statute. *State* v. *Ploof*, 116 Vt 93, 95, 70 A2d 575.

In the case for consideration, however, there is no necessity for resorting to the generic nature of the statute. A mere recitation of it will suffice to show that we have no need to concern ourselves with more than its specific prohibitions. V. S. 47, §8458 reads:

"A person who disturbs or breaks the public peace by tumultuous and offensive carriage, by threatening, quarrelling, challenging, assaulting, beating, or striking another person shall be * * * " punished as therein provided.

With the language of the statute in mind, it cannot be questioned that the respondent's conduct, culminating as it did in the threat shouted from the highway, "I'll cut your damn throat," while brandishing a beer bottle menacingly, constituted a breach of the peace, and the jury would have been justified in so finding from the evidence before it.

■ At one time it was thought that the person threatened must necessarily be put in fear to constitute a breach of the peace. *State* v. *Benedict*, 11 Vt 236. Such a requirement is no longer held to be indispensable, particularly where others beside the threatened may be said to have been disturbed. *State* v. *Christie, supra*. Even under the former rule there was evidence for the jury in this case.

■ There being sufficient evidence tending to show that a breach of peace was committed in at least one of the modes set forth in the statute, a case was made for the jury; for proof of the commission of a breach of the peace in any of the modes alleged will sustain the complaint. *State* v. *Mathews*, 42 Vt 542, 546.

It follows from the foregoing that the trial court was in error when it directed a verdict in the respondent's favor.

*The exceptions of the State are sustained, and the case is remanded.*