## State of Vermont v. James Murphy, IV

[262 A.2d 456]

No. 56-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 3, 1970

*Frank G. Mahady*, State's Attorney, for the State.

*Harry A. Black*, White River Junction, for Defendant.

**Shangraw, J.** This is a prosecution for breach of peace, a violation of 13 V.S.A. section 1021. Respondent was brought to trial before the Vermont District Court, Unit No. 6, Windsor Circuit, and by a jury's verdict found guilty. Judgment was entered on the verdict, sentence imposed, and execution stayed pending respondent's appeal to this Court for review.

Section 1021, *supra*, provides:

A person who disturbs or breaks the public peace:

(1) By destruction of property, assaulting, beating or striking another person shall be imprisoned * * * or fined * * *.

(2) By any disorderly act or language, which does not amount to assault or battery, or destruction of property, shall be imprisoned * * * or fined * * *.

The information alleged that in Windsor in the County of Windsor, on September 13, 1968, the respondent "did then and there disturb and break the public peace, and then and there assaulted, and beat and struck another person, to wit, Mr.

Edward Leonard, an officer of the law for the Town of Windsor, in violation of 13 V.S.A. Sec. 1021 * * *."

Viewing the evidence in the light most favorable to the State, as we must do, the jury could reasonably have found the following facts.

About two o'clock in the morning of September 13, 1968, Robert Biron, of Claremont, N.H., arrived at the Windsor Police Station and complained to the dispatcher in charge that a man was in his car and would not remove himself from the automobile.

The dispatcher, by radio, notified Edward Leonard, a police officer of the Town of Windsor who was then on duty, of the complaint. Officer Leonard approached the Biron car and observed that Harry Gilbert was occupying the front seat of the automobile. He immediately alighted upon the arrival of this officer. Respondent was seated in the rear seat of the Biron car, which was parked near the Windsor Fire Station.

Mr. Leonard asked the respondent to get out of the automobile three times. He refused, became argumentative, used obscene language, and threatened to kill Leonard.

At this point Officer Leonard advised the respondent that it would be necessary to arrest him if he did not get out of the automobile, which he refused to do.

Clifford Robinson, of the local police force, then arrived on the scene and was requested by Leonard to get two night sticks and a can of mace from the police cruiser. Upon Robinson's return to the Biron car, Leonard then sprayed the mace, a chemical irritant similar to tear gas, into the rear of the Biron vehicle. The respondent then made a hasty retreat from the automobile by jumping over the back of the front seat and got out of the car through its right hand front door.

At the time Mr. Leonard stood on the left hand side of the car. At about this time respondent stated "I'll kill you bastards." Respondent was then told that he was under arrest for disorderly conduct.

Officer Leonard testified to the following events, which followed the respondent's exit from the automobile.

Q. What did you do at that point?

A. I started to go round the rear of the car and the respondent also moved toward the rear of the car.

Q. What did you do at that time?

A. I told him he would have to come into the station that I was placing him under arrest for disorderly conduct.

Q. How did he reply to this?

A. He said I'll kill you bastards.

Q. Did he do anything?

A. Yes he put his hands up similar to a prize fighter and while making the threat I'll kill you he lunged at me and threw a punch, his right hand struck me in the left wrist.

Q. What happened after he threw this punch?

A. He continued following through with the punch, rammed into me and knocked me down to the ground.

Q. What did he do then?

A. In going down I thumped the back of my head on the rear bumper of the car. He ended up on top of me his right forearm across my throat alternately pressing down and choking me between his forearm and the pavement and tried to reach the night stick I held in my right hand.

The foregoing facts as testified to by Leonard, and supported by Robinson's testimony, are not disputed by the respondent. Officer Robinson and Mr. Gilbert removed the respondent from Leonard. He later broke away from them and ran away.

Under the provisions of section 1021, subsection (1) breach of peace includes "assaulting, beating or striking another person" commonly referred to as assault and battery. The complaint charges the respondent with assault. It also charges a battery, in that it alleges the respondent beat and struck Officer Leonard.

■ Assault and battery are not synonymous terms. It has become customary in jurisprudence to refer to the term "assault and battery" as if it were a legal unit, or a single concept. 6 Am.Jur.2d, Assault and Battery, section 7.

■ Generally speaking an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present. Although physical contact is not an essential element, violence, threatened or offered, is. 6 Am.Jur.2d, Assault and Battery, section 3, p. 9.

██ · Actual offer to use force to injure another is "assault" and the use of it is "battery". *Hayes* v. *Lancaster,* 200 N.C. 293, 156 S.E. 530, 531. *People* v. *McCaffrey,* 118 C.A.2d 611, 258 P.2d 557, 562.

In considering the present case, the evidence supports a violation of the statute in at least two particulars. It first reveals a threat or assault by the respondent while he was both in and out of the automobile to kill Officer Leonard, and secondly, the battery which followed as a result of respondent's physical violence by striking Leonard after the respondent had alighted from the Biron automobile.

Respondent first urges error by the trial court in charging that no intent was required to constitute the crime alleged in the complaint. Such portions of the charge to which respondent took exception have not been set forth in his brief. However, allowing him the benefit of any doubt, counsel may well have had in mind the following comments made by the court in its charge.

> "Committing acts or making statements likely to produce violence and disturbances of good order though no such eventuality is intended may constitute a breach of peace. * * * It is not essential that the defendant should have designed to inflict the precise injury * * * so too, the personal injury sustained through the reckless conduct of another may constitute an assault and battery although there was no actual intention to inflict the injury."

The court further stated that "An assault is an attempt or offer with force or violence to do bodily harm to another, whether from malice or wantonness, under such circumstances as denote at the time an intention to do it coupled with a present ability to carry such intention into effect." By further defining "assault" the court continued by saying, "An assault may go on further than threatening motions such as a clenched fist under circumstances that indicate actual intent to harm and with the then present ability to do it." Again, the court charged that "* * * an assault may be, and usually is, committed by the actual and intentional application of physical force; * * *."

Considering the charge in its entirety, and not piecemeal, we are satisfied that the general tenor of the charge is consis-

tent with the view that a demonstration of unlawful intent, rather than the actual intent, constitutes the offense of assault. *State* v. *Roby*, 83 Vt. 121, 129, 74 Atl. 638; *State* v. *Deso*, 110 Vt. 1, 6, 1 A.2d 710. Respondent cannot prevail on the intent issue.

The respondent had admittedly been drinking during the afternoon and evening of September 12, 1968. He testified that he had no recollection of the offenses for which he was charged in the complaint. By reason of respondent's claimed intoxication, it is urged in his brief that he lacked the ability to carry out any intention to assault Officer Leonard.

■ To sustain a criminal complaint for assault it is not the secret intent of the assaulting party nor the undisclosed fact of his ability or inability to commit a battery that is material, but what his conduct and attending circumstances denote at the time to the party assaulted. *State* v. *Deso*, 110 Vt. 1, 7, 8, 1 A.2d 710. See *Clark* v. *Downing*, 55 Vt. 259. Here, we have a completed physical act of striking Mr. Leonard which constituted battery. From the circumstances surrounding, and leading up to the striking of this officer by the respondent, the jury was at liberty to properly arrive at the conclusion that this act was intentional and not accidental.

Respondent further urges that the trial court erred in failing to charge the jury that they might consider the fact of the respondent's intoxication as bearing upon his inability to form a criminal intent.

■■ The fact that a criminal act was committed while in a state of intoxication and because of such intoxication is, generally speaking, no defense to a charge of crime. 21 Am.Jur.2d Criminal Law, section 107. Proof of "specific intent" is required in cases of certain aggravated types of assault, such as assault with intent to murder, rape, or robbery. It appears to be pretty well settled that simple assault is not a "specific intent" offense. 6 Am.Jur.2d, Assault and Battery, section 20, *State* v. *Roby*, *supra*, is to the same effect.

The trial court properly charged that voluntary intoxication was not a defense available to the respondent under the facts presented in this case.

Respondent also assigns error by the trial court in charging that the person threatened need not be put in actual fear in

order to constitute a breach of peace by the one making the threat.

■ ■ It is not required that the person threatened must necessarily be put in fear to constitute a breach of peace. Although terror usually accompanies the crime of breach of peace in its aggravated form, fear is not an essential ingredient of the offense. *State* v. *Christie*, 97 Vt. 461, 463, 123 Atl. 849. *State* v. *Wixon*, 118 Vt. 495, 498, 114 A.2d 410. The controlling factor is found in the background and circumstances which attend the alleged offense. *State* v. *Sanderson*, 123 Vt. 214, 216, 185 A.2d 730.

In the *Wixon* case, *supra,* the court was dealing principally with simple assault,—a violation of V.S. 47, section 8458. This statute was amended to its present form and contents by No. 178 of the Public Acts of 1957, and as amended now—13 V.S.A. section 1021.

The respondent urges that the conviction in the *Wixon* case, *supra,* was under the old statute and is not controlling in this case. This Court in *State* v. *Sanderson, supra,* which was decided under the present statute, made the following observation. "Although the statute has been changed, the long-standing legal concept of the offense remains the same."

■ During the trial, the respondent, at least in part, tried the case on the theory that respondent's arrest following his exit from the automobile was illegal. This claim is without merit. Officer Leonard had reasonable grounds to request that the respondent leave the car. While so doing the respondent used obscene language, and threatened to kill this officer. By the use of such disorderly act or language, this officer at this point had authority to make the arrest as an offense, committed in his presence, under the provisions of 13 V.S.A. section 1021, *supra.* See *State* v. *Sherwood*, 5 Conn. Cir. 583, 258 A.2d 558, which is factually similar to this case.

Respondent takes nothing by his appeal.

*Judgment affirmed. Let execution be done.*