## State of Vermont v. Gerald W. D'Amico

[385 A.2d 1082]

No. 123-76

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed April 4, 1978

*Gregory W. McNaughton,* Washington County State's Attorney, and *Brian J. Grearson,* Deputy State's Attorney, Montpelier, for Plaintiff.

*Cheney, Brock & Sidel,* Montpelier, for Defendant.

**Daley, J.** The respondent was convicted of a violation of 13 V.S.A. § 1024(a)(2). The facts of this case are not seriously disputed and may be summarized as follows. On the

day of the alleged offense the respondent sat at home drinking beer while his girlfriend attended a local music festival with one James Holiday. When they returned in the early evening, the respondent threatened to "take a gun" to Holiday the next time. After consuming a quantity of wine, the respondent took his shotgun and drove his truck to a neighboring residence where Holiday and others were sitting in front of the house. Respondent approached the residence screaming, threatening to kill someone, and firing at least four shots. Although a piece of flying debris caused by the shotgun fire struck one Donna Arley, no one was injured.

As a result of these activities the respondent was charged under 13 V.S.A. § 1024(a)(2) with an attempt to cause bodily injury to James J. Holiday and Donna Arley with a deadly weapon.

The respondent, in his request to charge, asked the trial court to instruct the jury to consider the evidence of his intoxication as bearing upon his capacity to form the requisite criminal intent to commit the crime charged. The trial court, however, instructed that voluntary intoxication is not a defense to the commission of a crime. From the court's instruction as given and from its failure to instruct as requested, the respondent appeals.

The State argues that the offense charged is simply a common law assault committed with the use of a deadly weapon and that the mental element required for simple assault is controlling. Citing State v. Murphy, 128 Vt. 288, 262 A.2d 456 (1970), it contends that simple assault is a general intent crime. The State urges us to hold that policy and logic dictate that aggravated assault requires the same general intent, and that therefore, under Murphy, consideration of intoxication should not be permitted. We disagree.

Decided in 1970, State v. Murphy was a prosecution for a breach of peace under 13 V.S.A. § 1021, now superseded, which made it a crime to destroy property, assault, beat or strike another person. While this Court considered the offense charged under § 1021 to be a simple assault requiring only the capacity to form a general criminal intent, and thus excluding evidence of intoxication to diminish that capacity, we distinguished crimes of assault with intent to rob, murder, or rape,

at that time codified at 13 V.S.A. §§ 601–607, as crimes requiring the capacity to form a specific intent. *State* v. *Murphy, supra,* 128 Vt. at 293, 262 A.2d at 460. In Act No. 222 of the 1971 Adjourned Session, the Vermont General Assembly both replaced 13 V.S.A. § 1021 covering the general intent crime of simple assault and repealed 13 V.S.A. §§ 601–607 covering the specific intent crimes of assault with intent to murder, rape or rob. By the same legislation the General Assembly enacted a new scheme dealing with the various crimes of assault divided into the following categories: (1) 13 V.S.A. § 1023, simple assault; (2) 13 V.S.A. § 1024, aggravated assault; (3) 13 V.S.A. § 1025, recklessly endangering another person; (4) 13 V.S.A. § 1026, disorderly conduct.

The novel question for this Court is to determine, first, the mental capacity the Legislature intended to require for the commission of the statutory crime charged under 13 V.S.A. § 1024(a)(2), and, secondly, whether evidence of voluntary intoxication is available to diminish the requisite capacity. The statute provides as follows: "A person is guilty of aggravated assault if he . . . (2) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."

It is evident that the intent of the Legislature in enacting 13 V.S.A. §§ 1023–1026 was to deal with the full range of assault crimes from those requiring the capacity to form only a general intent, heretofore covered by 13 V.S.A. § 1021, to those requiring the capacity to form specific intent, heretofore covered by 13 V.S.A. §§ 601–607. The statutory scheme adopted to accomplish this purpose, including 13 V.S.A. § 1024(a)(2), is borrowed almost verbatim from the Model Penal Code §§ 211.0–211.2 (1962). Unlike Vermont's former breach of the peace statute, 13 V.S.A. § 1021, now superseded, which relied on the common law to define the elements of the offense, § 1024(a)(2) enumerates the elements within its provisions. Under § 1024(a)(2) the State had the burden of proving beyond a reasonable doubt the following: first, the respondent attempted to do an unlawful act; secondly, the unlawful act attempted was the causing of bodily injury; thirdly, the unlawful act attempted was done with a deadly weapon.

█ Although the rationale of the Model Penal Code is not binding on this Court, it is indicative of what the General Assembly intended in adopting legislation modeled on the Code. Under the Code the attempt to commit an offense necessarily involves the same mental intent as would be required in the actual commission of that offense. Model Penal Code § 5.01 (1962). Section 1024(a)(2) defines the completed offense as "purposely or knowingly [causing] bodily injury to another with a deadly weapon" thus making the mental element of either purpose or knowledge a necessary element of the crime charged. *Id.* § 2.02. Code rationale makes evidence of intoxication available to exculpate if it negatives an element of the offense, *Id.* § 2.08(1), and, according to Code commentary, proof of a mental state characterized as purposeful and knowing may be negated by evidence of intoxication. *Id.* § 2.08, comment (Tent. Draft No. 9, 1959).

██ It is evident to us that the Code concept of purpose and knowledge corresponds to the common law concept of specific intent, as we have already had occasion to characterize, in dicta, a § 1024(a)(2) offense as a specific intent crime. *State* v. *Persuitti,* 133 Vt. 354, 356, 339 A.2d 750, 752 (1975). Both of these concepts import a conscious intent or design to act as charged. See *Crawford* v. *Joslyn,* 83 Vt. 361, 362, 76 A. 108, 108 (1910); *Wright* v. *Clark,* 50 Vt. 130, 136, 28 Am. Rep. 496, 500 (1877); Model Penal Code § 2.02(2)(a), (b) (1962). We conclude, therefore, that it was the Legislature's intent in enacting 13 V.S.A. § 1024(a)(2) to proscribe an act which included as an essential mental element that the act be done purposefully or knowingly. Furthermore, we hold that voluntary intoxication is available to negate a finding of the requisite mental intent in a charge under this statute. Since there was evidence in the case of respondent's intoxication, it was for the jury to determine the effect on the respondent's mental processes and whether his mental capacity was so diminished as to prevent him from forming the requisite felonious intent. *State* v. *Girouard,* 135 Vt. 123, 137, 373 A.2d 836, 845 (1977); *State* v. *Barrett,* 128 Vt. 458, 461, 266 A.2d 441, 444 (1970). The trial court's instruction on voluntary intoxication standing alone was, therefore, error.

The State argues that it is anomalous to allow intoxication to diminish the capacity to commit crimes of assault which occur so frequently in situations involving inebriation, and we are not unmindful of the policy implications if by our decision we leave the State without adequate means to punish drunken behavior that is without question socially harmful. See *People* v. *Hood*, 1 Cal. 3d 444, 458, 462 P.2d 370, 379, 82 Cal. Rptr. 618 (1969). The statutory scheme generally covering assault, of which 13 V.S.A. § 1024(a)(2) is but a part, does, however, enable the State to punish various unlawful acts without proving that the act was committed with purpose and knowledge. Whether voluntary intoxication is available to exculpate in charges not involving the mental element of purpose and knowledge is not determined by this opinion.

We note here that while the respondent requested a charge on diminished capacity due to voluntary intoxication he neglected to object to the court's charge as given which failed to honor his request. Our rules require that before an error in the jury instructions can be the basis of an appeal the aggrieved party must have made specific objection after the delivery of the charge, stating distinctly the matter to which he objects and the grounds of the objection. V.R.Cr.P. 30.

The trial court, however, failed to comply with V.R.Cr.P. 30 in not informing counsel of its proposed action on the request and in so doing committed error. *Fraser* v. *Choiniere*, 133 Vt. 631, 634, 350 A.2d 755, 758 (1975). We find that the error in the trial court's charge so affects the substantial rights of this respondent that we will notice the error on appeal despite the lack of proper objection. V.R.Cr.P. 52(b); *State* v. *Morrill*, 127 Vt. 506, 511, 253 A.2d 142, 145 (1969). Our inclination to do so is enhanced by the trial court's failure to comply with V.R.Cr.P. 30.

*Reversed and remanded.*