## State of Vermont v. Vernon V. Truman

[ 204 A.2d 93 ]

June Term, 1964

·Present: Holden, C. J., Shangraw, Barney, Smith and Keyser, Supr. J.

Opinion Filed October 6, 1964

*John F. Bernasconi,* State's Attorney, for the State.

*Stephen B. Martin* for respondent.

**Shangraw, J.** The respondent has brought this case before us on an appeal following his conviction on counts of breaking and entering in the nighttime, and breaking and entering in the daytime, a violation of 13 V.S.A. §§1201 and 1202 respectively.

The assignments of error relate to the denial by the presiding judge of respondent's application for a change of venue; the refusal of the trial court to allow counsel to withdraw from the case; and from the court's denial of respondent's motion for a mistrial.

Following is a summary of the factual situation leading up to the issues presented by the appeal. On April 19, 1963 the respondent was arraigned in Montpelier Municipal Court to answer to an information charging him on one count of breaking and entering in the nighttime and also breaking and entering in the daytime. On the same day John Shuttle, Albert Premont, and Richard Diego were also arraigned in municipal court on identical charges. The respondents Truman, Shuttle, and Premont requested that Stephen B. Martin, attorney of Barre, appear as their counsel. Mr. Martin was appointed as counsel to represent these three respondents. Diego was represented by different counsel. On April 24, 1963 Diego pleaded guilty.

On April 26, 1963 Premont withdrew his plea of not guilty and pleaded guilty.

Informations were filed against the respondent and Shuttle in the Washington County Court on May 3, 1963 charging them with the same offenses. Respondent's case was assigned for trial May 7. On May 6 appellant's counsel and the state's attorney informed the clerk of the Washington County Court that the cases against the respondent and Shuttle would be disposed of in the municipal court. On May 7 Shuttle pleaded guilty in municipal court to the two offenses for which he was first charged.

The respondent Truman apparently changed his mind and declined to plead guilty in municipal court. A new information was filed against him in the Washington County Court on May 9 again charging him with breaking and entering in the nighttime, and breaking and entering in the daytime.

On May 13 the respondent pleaded not guilty to this new information, and his case was assigned for trial on May 15. Mr. Martin then requested permission to withdraw as Truman's counsel on the ground of a conflict of interest, inasmuch as he had represented Shuttle and Premont, neither of whom had been sentenced. Counsel was granted leave to withdraw on condition that he have someone ready to represent the respondent when the case was reached for trial. Other counsel was not obtained.

On May 13 respondent filed with the presiding judge an application for a change of venue under 13 V.S.A. §4631, "because the matters involved in said action have been given such wide publicity through radio stations and newspapers circulating in said County of Washington and otherwise in a manner so discriminatory to defendant and prejudicial to his interest, that a fair trial by an impartial and unprejudiced jury cannot be had in said Washington County Court." A hearing was held May 14 on the application. On the same day findings of fact were made and filed by the presiding judge. In the exercise of judicial discretion the motion was denied.

On May 15, 1963, and prior to trial, the respondent moved for a reconsideration of the denial of a change of venue. Counsel again moved for permission to withdraw as respondent's attorney. These motions were denied. The trial began on May 15, lasting three days. The jury returned a verdict of guilty on both counts. On May 23 the respondent filed a motion for a new trial, and after hearing there-

on, the motion was denied. Judgment was thereupon entered on the jury's verdict, and the respondent has appealed.

The first question relates to the denial of the motion for a change of venue. In this connection the presiding judge made the following findings.

"(7) The series of breaks in the Northfield area for which the respondent and others were arrested received extensive coverage in the Times-Argus, a daily newspaper circulating in Washington County and surrounding areas. (Respondent's Exhibits D, E, F, G, and H)

(8) That during the period of time following the arrest of the respondent and other parties involved, radio station WSKI, operating in Montpelier with a coverage area of approximately thirty-five miles radius, broadcasted the respondent's involvement, his arrest and arraignments in Montpelier Municipal Court and Washington County Court, and other news items in connection therewith. (Respondent's Exhibits A, B and C)

(9) These radio broadcasts began at five-thirty in the forenoon and concluded at twelve-thirty in the afternoon and on the following hours—six A.M., six-thirty A.M., seven, seven-thirty, eight-thirty, ten-thirty and eleven-thirty A.M. and twelve-thirty P.M. and consisted of approximately fifteen daily newscasts.

(10) Respondent's arrest, along with the other parties involved, and the charges preferred against them was treated as a major local story by the radio station.

(11) The Court is unable to find anything unusual in the procedures followed by Station WSKI in disseminating the news concerning the respondent.

(12) The Times-Argus possesses an over-all daily circulation of approximately eleven thousand five hundred, the major part of which is in the cities of Barre and Montpelier.

(13) We have carefully examined the newspaper articles introduced as evidence by the respondent and we fail to find anything of an inflammatory or denunciatory nature in them. In fact, the articles appear nothing more than abstract reporting, the type of 'news story' we have become familiar with, know of, and are little influenced or impressed by.

(14) We are unable to find anything of an inflammatory nature in the radio spot newscasts.

(15) We are unable to find from the evidence introduced by the respondent that there exists in Washington County such an actual prejudice against him that a fair and impartial trial cannot be had."

Immediately following the filing of the findings the respondent presented to the presiding judge objections to his failure to find certain facts. These related to the first information filed in county court against the respondent on May 3, 1963. In substance, the objections called attention to the fact that during the morning of May 7, 1963 Frank Follett, a news reporter for the Times-Argus, and one Robert Brannon, newscaster for radio station WSKI, inquired of the presiding judge as to why the "Truman Case" scheduled to begin that morning was not in progress. They were informed by the judge that the information then pending against the respondent in the county court would be discontinued as the respondent was returning that morning to the Montpelier Municipal Court for a disposition of his case. An article covering this point appeared in the Times-Argus dated May 7, the Burlington Free Press, and was also reported by WSKI in its regular newscast on the same day. The foregoing publicity is urged by the respondent as a further reason for granting his request for a change of venue, which was denied. No contention is made that the information furnished the press and radio was incorrect.

By 13 V.S.A. §4633 it is provided that upon application made for a change of venue, "the judge to whom the application is preferred, may, in his discretion, by an order in writing direct that the trial of such respondent be removed to and had in some other county named."

The action of the presiding judge in denying the motion for a change of venue was clearly a discretionary ruling, and is not to be resolved unless an abuse of discretion is shown. *State* v. *Stacy,* 104 Vt. 379, 389, 160 A. 257. In determining whether there has been an abuse of discretion the test is whether the discretion was exercised on grounds or for reasons clearly untenable, or to an extent clearly unreasonable. *State* v. *Watson,* 114 Vt. 543, 545-546, 49 A.2d 174, citing *State* v. *Stacy, supra.*

Newspaper articles, even though denunciatory in character, are not in themselves in the absence of some evidence of the actual

existence of a prejudice against the accused, sufficient to require the judge, in the exercise of his discretion, to conclude that a fair and impartial trial cannot be had. *State* v. *Watson,* 114 Vt., *supra,* at 546.

Here, we merely have reporting of events without any adverse comments in the press or radio reflecting the guilt of the respondent. Nothing inflammatory or denunciatory appeared through either source.

Each prospective juror was ably examined for indications of prejudice by respondent's counsel. None appeared. Each indicated that he was not biased and had formed no opinion as to respondent's guilt. The court instructed the jury to disregard anything that had been read or heard by them. Respondent made no claim of prejudice later during the trial. The motion for a change of venue was not renewed after the jury was impaneled. In fact, respondent failed to exercise all six of his peremptory challenges which he was entitled to by virtue of 12 V.S.A. §1941.

Our examination of the record fails to disclose that respondent was tried by a prejudiced jury. He fell short of meeting the requirement recently reiterated by the Supreme Court in *Beck* v. *Washington,* 369 U.S. 541, 558, 82 S. Ct. 955, 8 L.Ed. 2d 98 (1962) "that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality." See *United States* v. *Smith,* 306 F.2d 596, 602. No abuse of discretion is made to appear. On this point respondent's claim is not sustained.

The next assignment of error relates to the failure of the trial court to permit Mr. Martin to withdraw as counsel for the respondent. When first arraigned in the municipal court on April 26 the respondent requested Mr. Martin as counsel with full knowledge that he also represented Shuttle and Premont in the companion cases. This representation continued during the later municipal court proceedings involving these three parties.

Upon the filing of the first information against the respondent in county court he again requested the appointment of Mr. Martin as counsel and such appointment was made. This attorney continued in this capacity at time of the second arraignment in county court and during the trial.

Upon arraignment on the second information in county court on May 9 Mr. Martin was informed by the court that the case might be

tried the following week, depending on the outcome of a case previously assigned for trial beginning Tuesday of that week. Later, on May 13 counsel was advised that the case would be tried on May 15.

On May 13 attorney Martin requested leave to withdraw as counsel for the respondent on the grounds that neither Shuttle nor Premont, whom he represented, had been sentenced by the municipal court. On this basis he claimed a conflict of interest. Counsel also stated that the respondent had requested him to withdraw. Counsel was informed by the court that he was given the right to withdraw on condition that someone would be ready to represent the respondent when the case was reached for trial. Later, on May 15, and before trial, this request was renewed. No other counsel had been obtained and the request to withdraw was denied. No request for a continuance of the case was made by the respondent. It does not appear of record that respondent at any time refused to accept Mr. Martin as his attorney. Following respondent's conviction, and at his request, Mr. Martin was appointed to pursue this appeal. This last appointment is convincing indication that respondent had implicit trust in this attorney, and that he entertained no thought that his counsel had unfairly or improperly represented him during the trial.

We recognize that a respondent has a right to discharge his attorney and substitute other counsel at any time during the course of the proceedings. However, this right is not so absolute that its exercise may not be denied where it will unduly prejudice the other party or interfere with the administration of justice. To hold otherwise would enable a respondent in a criminal proceeding to delay his trial until he had exhausted his capability of acquiring defense counsel, and harass and delay the effective prosecution of the crime. *People* v. *Mueller,* 2 Ill. 2d 311, 118 N.E. 2d 1; *People* v. *Rankins,* 18 Ill. 2d 260, 163 N.E. 2d 814, 817.

In assigning counsel to an indigent respondent the court should act in such manner as to insure that both the individual and the State will be impartially protected. It is the duty of the court to see that counsel assigned has sufficient ability and experience to fairly represent the respondent, to present his defense, and to protect his rights. *State* v. *Hudson,* 55 R.I. 141, 179 Atl. 130, 100 A.L.R. 313, 320. See 14 Am. Jur. Criminal Law, §174, at 888, and 1963 cum. supp., at 196.

■ It is to be acknowledged that the respondent was entitled to such representation as not to deprive him of effective assistance. With this in mind counsel should be most circumspect in accepting employment from more than one respondent involved in companion cases, such as here. Likewise, the courts should be most cautious in the appointment of counsel in such cases where a conflict of interest may exist, or develop during trial. In this case no claim is made, nor has it been demonstrated, that Mr. Martin's representation of the respondent's co-respondents in any way embarrassed or jeopardized his fidelity to the respondent's cause.

Here, the respondent repeatedly made his own choice. He was afforded the services of competent counsel. It cannot be said that from his first arraignment in municipal court to his trial in county court that he had been deprived of a reasonable time to prepare his defense. At no time did he insist on counsel other than Mr. Martin. There is nothing in the respondent's brief, nor has there been called to our attention, anything indicating how, or in what manner Mr. Martin's representation of Tuttle and Premont prejudiced respondent Truman from receiving a fair trial. In fact, Shuttle and Premont testified favorably for the respondent during his trial. No harm to the respondent has been demonstrated by the denial of counsel's motion to withdraw.

■ The last assignment of error is addressed to the state's attorney's remarks during final argument that Mr. Martin represented Shuttle and Premont in connection with the companion cases brought in the Montpelier Municipal Court. This fact did not appear in evidence and of course such comment should not have been made. Upon objection raised to this argument the court immediately declared that the statement was improper, and instructed the jury to disregard it. Respondent then moved for a mistrial which was denied and now claims error. It is urged that the foregoing remarks were unwarranted and prejudicial.

The respondent's motion for a mistrial was addressed to the trial court's discretion. *Lewis* v. *Gagne,* 123 Vt. 217, 220, 185 A.2d 468; *Ryan* v. *Barrett,* 105 Vt. 21, 23, 24, 162 Atl. 793. An assignment of error to the denial of a motion for a mistrial will not be sustained unless prejudice is made affirmatively to appear. *State* v. *Levine,* 117 Vt. 320, 328, 91 A.2d 678.

■ As stated in *State* v. *Gravelle,* 117 Vt. 238, 246, 89 A.2d 111, "Whether an improper argument is of such nature as to require a reversal depends upon the attending circumstances and there is little profit in comparing one case with another; and assuming the impropriety, prejudice must affirmatively appear if the exception is to be sustained." Citing, *State* v. *Frotten,* 115 Vt. 146, 147, 53 A.2d 52. A criminal conviction will be reversed on the ground of improper argument to the jury only when prejudice is affirmatively shown, or the remark is such that prejudice may be presumed. *State* v. *Frotten, supra,* p. 147, *State* v. *Garceau,* 122 Vt. 303, 308, 170 A.2d 623.

■ The court below instructed the jury to disregard the comments of the state's attorney. We assume that the jury abided by the instructions of the court. There can be no assumption under our system of jurisprudence that the jury will disregard the instructions of the trial court. *Lewis* v. *Gagne,* 123 Vt. 217, 219, 185 A.2d 468, and cases cited.

We do not think that the jury could have been prejudiced by the single expression used by the state's attorney, which the jury was ordered to disregard. Since prejudice is not made to appear the claimed error in denying the motion for a mistrial is not sustained. *State* v. *Levine,* 117 Vt. 320, 328, 91 A.2d 678; *State* v. *Parker,* 104 Vt. 494, 500, 162 Atl. 696. We are satisfied that the respondent was afforded a fair and impartial trial.

After verdict the respondent moved for a new trial, and as grounds therefor, set forth the precise issues disposed of in this opinion. The motion was denied. For reasons herein stated the ruling of the trial court was proper and is sustained.

No error appears.

*Judgment affirmed. Let execution be done.*