## In Re John A. Shuttle

[ 214 A.2d 48 ]

June Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed October 5, 1965

*John H. Carnahan* for petitioner.

*Chester S. Ketcham,* Deputy Attorney General, for the State

**Shangraw, J.** The petitioner, John A. Shuttle, seeks release from the Vermont State Prison at Windsor by habeas corpus. The petition as amended, and the answer filed by the attorney general's office of this State on behalf of Robert G. Smith, Warden of Vermont State Prison, presented controverted issues of fact and law.

The Court issued a rule appointing a Commissioner to conduct a hearing on the petition with directions to report his findings on the petition. Counsel was appointed to represent the respondent at this hearing.

Following the hearing, at which time respondent was present and

represented by counsel, the Commissioner reported his findings of fact to this Court. On argument before this Court counsel for parties interested agreed that the report of findings made and filed by the Commissioner may be accepted by this Court. The report as filed is accepted. A verbatim transcript of the hearing was also made and filed by an official stenographer.

The first and major issue presented for consideration, is whether or not, under the facts presented, there is a constitutional infirmity in the proceedings challenged by this petition, arising from the fact that Attorney Stephen R. Martin represented the petitioner as well as several co-respondents.

The petitioner first asserts that, upon the reported facts made by the commissioner, which are not in dispute, a question of conflict of interest arose and that such conflict vitiated the judgment of guilty on the petitioner's pleas of guilty even though no actual harm resulted. He claims that the potentiality that such harm may have resulted, rather than that it did result, furnishes the appropriate criterion.

It is also urged by the petitioner that by reason of the multiple representation by Mr. Martin, he, the petitioner, was deprived of the effective assistance of counsel and prejudiced thereby.

■ When a judgment of conviction is collaterally attacked in a habeas corpus petition, the petitioner must clearly establish that due process was denied. *Commonwealth* v. *Maroney* (Pa.), 210 A.2d 920; *Commonwealth* v. *Rundle*, (Pa.), 207 A.2d 829.

■ The right of an accused in a criminal prosecution to the assistance of counsel under the Sixth Amendment to the United States Constitution is made obligatory upon the states by the Fourteenth Amendment. 21 Am. Jur. 2d Criminal Law, § 318; *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L. ed. 2d 977, 84 S. Ct. 1758; *Gideon* v. *Wainwright*, 372 U.S. 335, 9 L. ed 2d 799, 83 S. Ct. 792, 93 A.L.R. 2d 733. The right to counsel means the right to effective assistance of counsel and applies whether counsel is retained by the accused or appointed by the court. *State* v. *Truman*, 124 Vt. 285, 292, 204 A.2d 93.

In passing upon the issues in controversy we now turn to the factual aspects of the case as determined by the Commissioner.

Throughout a period of from one and a half to two years prior to April 17, 1963, there had occurred in the area surrounding the Town of Northfield, Vermont, a series of from thirty to forty instances of breaking and entering seasonal camps, cottages and farms, and the removal of items of personal property therefrom.

On April 17, 1963, the State's Attorney of Washington County issued a search warrant authorizing the search of petitioner's home for two guns. On the same day search was made of petitioner's residence, permission was obtained from one Marcott to search a barn or shed owned by Marcott, in which petitioner had stored a quantity of personal property. As a result of the search of petitioner's residence and of the Marcott shed or barn, various items of personal property were found. None of the items listed on the search warrant were found.

A number of the items found and removed from the house of the petitioner and the Marcott shed were recognized by Corporal Clement Potvin (now Sgt.) of the Vermont State Police, as having been reported as stolen from the various camps, cottages and farms. The petitioner was taken into custody by the officers between 1:00 and 2:00 A.M. on April 18th of the year 1963.

During the period between April 17 and April 22nd of the year 1963, the Vermont State Police and other law enforcement agencies, conducted an extensive search for missing items of personal property. Several persons were arrested, including petitioner's brother, Donald Shuttle, Ricardo alias Ricky Diego, Albert Premont, Glenn Corey and Vernon alias John Truman.

Some time during the daylight hours of April 18, 1963, petitioner requested and was granted leave to call his attorney, Richard E. Davis, Esq., of Barre, Vermont. At that time Mr. Davis had represented the petitioner in another criminal proceeding then pending against him. Mr. Davis was not available during the day but on the evening of April 18th he and Stephen R. Martin, Esq., one of his associates, visited the petitioner and the petitioner's brother, Donald, at the Washington County Jail. At that time Mr. Davis undertook to see that the petitioner and his brother, Donald, were adequately represented.

On April 18, 1963, an information and warrant was issued by the state's attorney of Washington County, charging the petitioner with the crime of breaking and entering in the night time, a dwelling house owned by Ralph Goodel.

The petitioner appeared before the Montpelier Municipal Court on April 19, 1963, represented by Stephen R. Martin, entered a plea of not guilty and was remanded to the Washington County Jail for his inability to furnish bail. At the same time Mr. Martin also appeared and entered pleas of not guilty in behalf of petitioner's brother Donald, also Truman, Corey and Premont, all of whom were also charged before the Montpelier Municipal Court with participating in the breaking and entering activities wth petitioner.

At no time did Mr. Martin represent Diego, the sixth person involved. Thereafter, the representation of Corey was assumed by other counsel. Mr. Martin continued to represent the petitioner, Donald Shuttle, Premont and Truman, until their cases were disposed of. With the passage of time the various co-respondents, one by one, entered pleas of guilty, in Municipal Court, until there remained only John Shuttle and Truman, both represented by Martin.

On April 19, 1963, three additional informations and warrants were issued by the state's attorney of Washington County, charging the petitioner with three additional offenses of breaking and entering. On April 22nd, the petitioner was arraigned on these three charges, appeared personally, and by his attorney, Mr. Martin, and entered a plea of not guilty to each count.

On April 24, 1963, petitioner requested the appointment of Mr. Martin to represent him at the expense of the State of Vermont, and Martin was so appointed. No question is made as to the competency of Mr. Martin.

During the period between April 22nd and May 7th, 1963, Mr. Martin, with reasonable diligence, investigated the facts, studied the legal problems affecting the rights of his three clients. He learned that at least three of the other respondents, Diego, Premont and Corey had given signed statements implicating the petitioner in the four crimes with which he was charged. He understood these three parties planned to plead guilty, and would be available to the State as witnesses in case the petitioner or Truman decided to stand trial before the Washington County Court which was then in session. He also learned that the state's attorney was preparing informations and warrants for presentation to the Washington County Court in the event that the causes then pending before the Montpelier Municipal Court were not speedily disposed of.

Mr. Martin was aware of the extensive criminal record of the petitioner which included convictions of at least three prior felonies. His client, the petitioner, had admitted to him the participation in all four of the crimes with which he was charged. Mr. Martin concluded that the petitioner faced certain conviction if he insisted upon trial and in view of his previous record and lack of cooperation he might face a maximum sentence of fifteen years' imprisonment on each count.

In arriving at the decision as to whether or not attorney Martin should advise the petitioner to plead guilty to the four charges then pending against him in the Montpelier Municipal Court, both he and

petitioner were primarily concerned with the length of sentence which he might anticipate or risk by insisting upon a trial before the Washington County Court.

The efforts of Mr. Martin were directed to a considerable degree in attempting to obtain from the state's attorney a commitment concerning a recommendation of sentence. The state's attorney consistently refused to make any commitment. On May 7, 1963, Mr. Martin and the state's attorney conferred with the Judge of the Montpelier Municipal Court, in an effort to obtain some commitment or indication of the sentences which would be imposed in the event that pleas of guilty were entered. On this point no commitment could be obtained. After the conference, Mr. Martin advised the petitioner of his efforts and the petitioner decided upon Mr. Martin's recommendation to enter pleas of guilty to the four charges.

At the time when petitioner made his decision to change his pleas of not guilty, to guilty, Mr. Martin was then representing Truman in connection with the charges then pending before the Montpelier Municipal Court, based upon Truman's participation in the break in which petitioner was involved. At the time when Mr. Martin advised the petitioner to change his pleas to guilty, Mr. Martin then knew that Truman had decided to adhere to his plea of not guilty and stand trial before the Washington County Court.

On May 8, 1963, petitioner appeared with his attorney before the Montpelier Municipal Court and entered pleas of guilty to the four charges then pending against him.

Following the petitioner's pleas of guilty, he gave to Coporal Potvin a statement, with the knowledge and approval of his attorney, Mr. Martin. The primary purpose of making the statement in question was to assist the Department of Public Safety in determining how many of the unsolved crimes petitioner had participated in, and to determine, as soon as possible, from which camps, cottages and farms the items of personal property recovered by the police had been removed. It was the hope and opinion of Mr. Martin, also the petitioner, that by demonstrating the latter's repentance, and willingness to cooperate with the law enforcement agencies in clearing up a large number of unsolved crimes, petitioner might expect greater leniency from the Montpelier Municipal Court when the time for sentencing arrived.

Petitioner indicated his intention to testify favorably for Truman at the latter's trial. He did so. Mr. Martin was of the opinion and so advised the petitioner, that by being a hostile witness for the state in

this trial petitioner might prejudice his own status on the question of sentence.

At the time of petitioner's first arraignment and later when request was made by him that Mr. Martin act as his counsel, Mr. Shuttle then had knowledge that his attorney represented other co-respondents, including Truman. At no time was objection made by him before the Montpelier Municipal Court of this fact, nor any claim or notice given the court of any alleged conflict of interest. In fact, this question was never raised by him until the amendment of his petition for a writ of habeas corpus.

By reason of the overwhelming facts supporting petitioner's guilt, then in possession of the State's Attorney, there appeared no avenue of escape from convictions. The appraisal of the available evidence indicated that the chance of a successful defense was negligible. The petitioner and his counsel became principally concerned with the sentences to be imposed on pleas of guilty.

The right to challenge the propriety of an appointment of counsel on the basis of diversity of interests may be waived by an accused. 21 Am. Jur. 2d Criminal Law, § 319, pages 348-9; 23 C.J.S. Criminal Law, § 982 (9), pages 978-9; *U.S.* v. *Rollnick,* 91 F. 2d 911, 916; *People* v. *Fernandez,* 301 N.Y. 302, 93 N.E. 2d 859, 875. In the case of *People* v. *Freidrich,* 20 Ill, 2d 240, 169 N.E. 2d 752, 759, it was held that a defendant had the unquestioned privilege to waive his right to separate counsel. Where a guilty plea is voluntarily made, it waives the right to contend that there was a conflict of interest between the respondent and his co-respondent. *Martin* v. *United States* (CA5 Ga.) 256 F.2d 345, cert. den. 358 U.S. 921, 3 L. ed. 2d 240, 79 S. Ct. 294.

In support of petitioner's claim that a conflict of interests was present, depriving him of the effective assistance of counsel, he relies very strongly upon the case of *Glasser* v. *United States,* 315 U.S. 60, 62 S. Ct. 457, 467, 86 L. ed. 680. The facts present in the Glasser case, supra, are easily distinguishable from the case now under consideration. In the Glasser case, Mr. Glasser made known to the court his desire for the undivided assistance of counsel of his own choice. By this request, it was held that no waiver was present. Furthermore, even the opinion in the Glasser case refutes the petitioner's contention that an attorney's representation of co-respondents charged with related crimes results, per se, in a deprivation of petitioner's right to counsel as guaranteed by the State and Federal Constitutions. *Glasser* v. *United States,* supra, p.70. In the Glasser case both parties stood trial. The essential difference is that the issue of conflict of interest was not subject to waiver

by a plea of guilty, such as we have here. A showing of actual prejudice must appear. *Comonwealth* v. *Russell,* 195 Pa. Super. 277, 171 A.2d 819.

Two irrefutable conclusions are demonstrated by the record. First, there is the insistence by the petitioner that he be represented by Mr. Martin, knowing full well that his attorney also represented other co-respondents in related crimes. Secondly, his pleas of guilty to the offenses of which he was charged were intelligently and voluntarily made. He waived the privilege of independent counsel and entered the pleas, all with full knowledge of the circumstances. Petitioner cannot now complain.

Petitioner implies in his brief that attorney Martin should have in some way more fully examined the search warrant and its legal effect. Petitioner's pleas of guilty foreclose consideration of this issue.

Petitioner's claims have all been fully considered and are not sustained.

*It is adjudged that the petitioner, John A. Shuttle, is not illegally deprived of his liberty and he is remanded into the custody of Robert G. Smith, Warden of the Vermont State Prison, at Windsor, Vermont. The petition is dismissed.*

**Barney, J.** (concurring)   John Shuttle's petition for release under writ of habeas corpus is entirely premised on an alleged conflict of interest on the part of counsel he selected to represent him. This conflict took the form of simultaneous representation by this same counsel of some co-respondents. The majority opinion states, and I agree, that it is the law that this issue is waived by a voluntary plea of guilty. *Martin* v. *United States,* 256 F.2d 345, 349, cert. den. 358, U.S. 921. Such a plea was entered here and, in my view, completely governs this case.

Solely in connection with a belief that a petitioner might be bound to demonstrate prejudice from dual representation, evidence was presented on behalf of this petitioner outlining a great deal of the investigatory background of the case and the motivations of his attorney. Since the whole issue of conflicting representation was disposed of by the guilty plea, this matter became wholly irrelevant.

I am concurring here separately only for the purpose of making clear my position that these waived issues are not now available under this habeas corpus petition. My only concern is that their treatment in the majority opinion might lend an illusion of validity to these claims, or give the impression that, in some fashion, they tended to overcome the consequence of the guilty plea.