**State of Vermont v. Stanley F. Patch, Sr.**

[488 A.2d 755]

No. 83-025

Present: Hill, Underwood, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed January 18, 1985

*William S. Bos,* Windsor County State's Attorney, and *Bruce Pasfield,* Law Clerk (On the Brief), White River Junction, for Plaintiff-Appellee.

*William J. Donahue,* White River Junction, for Defendant-Appellant.

**Underwood, J.** Stanley Patch, the defendant, was convicted in a jury trial of unlawful mischief, a violation of 13 V.S.A. § 3701(c).[1] The defendant appealed his conviction, setting forth four claimed grounds for reversal: (1) the defendant was privileged to use force to remove a continuing trespass, (2) the crime of unlawful mischief is a specific intent crime requiring a showing of malice on the part of the defendant, (3) the defendant lacked even a general intent to commit unlawful mischief, and (4) the trial court erred in refusing either to provide the jury with a copy of its jury instructions, or to reread its instructions in their entirety.

In 1975, the defendant's wife, Helen Patch, took title to property known as the Foundry Property, located in Springfield, Vermont. In April, 1977, three municipal employees were found digging on what was allegedly Mrs. Patch's property, apparently looking for a sewer pipe. In 1977, the Town of

---

[1] 13 V.S.A. § 3701(c) states:

A person who, having no right to do so or any reasonable ground to believe that he has such a right, intentionally does any damage to property of any value not exceeding $250.00 shall be imprisoned for not more than six months or fined not more than $500.00 or both.

Springfield (Town) laid a new, four-inch underground conduit for utility lines on what was allegedly property owned by Mrs. Patch. Within this conduit, the Town installed wires connected to the Town's fire alarm system. In the summer of 1978, Mr. and Mrs. Patch hired a land surveyor to determine whether the conduit was located on Mrs. Patch's property. The surveyor determined that the conduit was located on her property for a distance of 95 feet, and so informed Mr. and Mrs. Patch and the Director of Public Works for the Town. In 1981, the Continental Telephone Company installed a new telephone cable in the same conduit.

The defendant objected to both instances of the installation of utility lines, by the town and by the telephone company, on what he claimed was property owned by his wife. These objections were made by him by letter as well as in person, on site, at the time the lines were installed. His first letter of objection was addressed to the Town, and was dated January 29, 1979; there was apparently no response to that letter. On May 11, 1982, following the installation of the telephone cable, the defendant's attorney wrote a letter of objection to the town's attorney. The town's attorney responded on May 13, 1982, by informing the defendant's attorney that Mrs. Patch's dispute was with the telephone company and not the town as "[t]he area in dispute appears not to involve any facilities the town of Springfield uses for its municipal use, . . . ."

On June 1, 1982, the defendant and one of his employees removed the manhole cover and thereby gained access to the underground utility lines located within the conduit below. The telephone cable was clearly labeled as such; the fire alarm cable was unlabeled. The defendant and his employee then caused both utility lines to be severed, resulting in both lines being inoperative for a period of time.

The defendant was originally charged with two felonies: (1) injury to lines, 30 V.S.A. § 2528, and (2) unlawful mischief, 13 V.S.A. § 3701(a). The defendant had a trial by jury. At the close of the State's case, the defendant moved for a directed verdict of acquittal on each of the charges. The court denied the defendant's motion in regard to the first count, but granted his motion in regard to the second count, permitting a lesser-included charge, unlawful mischief under 13 V.S.A. § 3701(c), to go to the jury. The jury found the defendant not

guilty on the charge of injury to lines and guilty on the charge of unlawful mischief. A judgment of conviction was entered by the trial court; the defendant filed a timely appeal to this Court.

## I.

The defendant's first claim of error is that the trial court erred in not instructing the jury, as set forth in his requests to charge, that the husband of a property owner is privileged to use reasonable force to remove a continuing trespass from his wife's property. The defendant's claim of privilege has its basis in common law tort doctrine. The defendant argues that the application of such a tort defense in criminal cases is generally recognized, and in support of his position cites the Model Penal Code and a seventy-six-year-old Vermont case. *State* v. *Cleaveland*, 82 Vt. 158, 72 A. 321 (1909). The State does not contest the applicability of the defense of privilege, recognized in tort law, to the present case. For this reason we will assume, without deciding, that such a defense is applicable in the present case.

The defendant cites Restatement (Second) of Torts § 87 (1965) to justify his actions in the present case. This section relates only to a "Defense Against Dispossessory Acts." The scope note states:

> This Topic deals with the privilege of the actor *to impose a harmful or offensive bodily contact or other bodily harm or a confinement or to put another in apprehension thereof* for the purpose of preventing the other from dispossessing him of his land or chattels.

(Emphasis added.) In the present case, it was alleged that the defendant harmed another's property, but he was not charged with either imposing harmful or offensive bodily contact or confinement, or putting anyone in fear of such contact or confinement. Therefore, § 87 is inapplicable to the facts of the present case.

The defendant also cites Restatement (Second) of Torts § 77 (1965) to justify his actions. The scope note to this section, under Topic 2, "Defense of Actor's Interest in His Exclusive Possession of Land and Chattels," states:

Topic 2 deals with the actor's privilege intentionally to invade another's interests of personality for the purpose of preventing or terminating another's intrusion upon the actor's possession of land or chattels.

Thus, it is apparent that § 77 would only be applicable in the present case if plaintiff were the owner or possessor of the land in question.[2] Since the defendant's wife holds the record title to the property, we must apply Restatement (Second) of Torts § 86 (1965)[3] in conjunction with § 77. Under these sections, the defendant must satisfy all three conditions in order to be justified in exercising a forceful defense of his wife's property interests. The defendant must have *reasonably* believed that the alleged intrusion of the lines under his wife's property could have *only* been terminated by the force used

---

[2] § 77. Defense of Possession by Force Not Threatening Death or Serious Bodily Harm

An actor is privileged to use reasonable force, not intended or likely to cause death or serious bodily harm, to prevent or terminate another's intrusion upon the actor's land or chattels, if

 (a) the intrusion is not privileged or the other intentionally or negligently causes the actor to believe that it is not privileged, and

 (b) the actor reasonably believes that the intrusion can be prevented or terminated only by the force used, and

 (c) the actor has first requested the other to desist and the other has disregarded the request, or the actor reasonably believes that a request will be useless or that substantial harm will be done before it can be made.

[3] § 86. Defense Against Intrusion on Third Person's Land or Chattels

The actor is privileged to inflict a harmful or offensive bodily contact or other invasion of another's interests of personality for the purpose of preventing or terminating the other's intrusion upon a third person's possession of land or chattels *under the same conditions and by the same means under and by which he is privileged to make similar invasions of another's interests to prevent or terminate an intrusion upon his own land or chattels*, if

 (a) the actor correctly or reasonably believes that the circumstances are such as to give the third person such a privilege, and his intervention is necessary to protect the third person's possession from intrusion, and

 (b) the third person is, or is reasonably believed by the actor to be, a member of his immediate family or household, or a person whose possession the actor is under a legal duty to protect. (Emphasis added.)

(§ 77(b)). The defendant's argument for the applicability of § 77 fails for two reasons. First, the defendant's wife had an alternative course of action in pursuing her rights, through a recognized and peaceful legal process, such as requesting an injunction against the continued presence of the utility lines under her property. Second,

> [i]n determining the reasonable character of a particular means used to prevent or terminate an intrusion, it is a matter of peculiar importance that the invasion of the other's interest which the means is intended or likely to cause shall be appropriate in kind and proportionate in extent to the value of the actor's interest protected, and the character and extent of the invasion which it is designed to prevent or terminate.

§ 77 comment i. This evaluation of reasonableness is contained in the jury instruction submitted by the trial court. Its instruction stated "you must then decide if the Defendant used reasonable means to remove the wire. It's for you to decide whether or not his acts were reasonable." Thus the jury's rendering of a verdict of guilty effectively determined that the prerequisite for this justification was not present, even though the instruction was not phrased in the precise language of § 77 or § 86.

■ The defendant correctly cites Restatement (Second) of Torts § 81(1) (1965) for the proposition that the defendant could use such force as he "correctly or reasonably believe[d] to be necessary to . . . terminate the other's intrusion." Once again, the jury's verdict indicates that it did not find the defendant's use of force to be reasonable. For these reasons, we find that the trial court's instructions to the jury concerning the reasonableness of the defendant's actions were sufficient for the jury to determine that the alleged tort defense was inapplicable in the present case.

■■ This Court also recognizes that the use of force to terminate an intrusion upon one's own property, or that of a third person, especially where a peaceful legal recourse is available, should be limited to those instances where an immediate termination is necessary to avoid or minimize foreseeable or ongoing damage. In the present case, where the utility lines

had already been laid, and where there was no evidence that their continued presence resulted in any increase in "harm" to the property of defendant's wife, defendant was not privileged to use force or any nonlegal, self-help method to terminate the intrusion.

## II.

The defendant's second and third claims of error concern the nature of the intent required to be shown to sustain a conviction of unlawful mischief.

## A.

The defendant's second claim of error is that the crime of unlawful mischief, 13 V.S.A. § 3701, requires a showing of malice in order to sustain the conviction. The defendant points out that at common law, and in the law of many jurisdictions, a crime of this sort requires a showing of malice on the part of the defendant. Indeed, such a showing of malice used to be required under 13 V.S.A. § 3701. However, in 1972, the statute was amended (1971, No. 222 (Adj. Sess.), § 6), and the statutory requirement for a showing of malice was deleted.

> We have held in numerous cases that when the meaning of a statute is plain and unambiguous on its face, it must generally be enforced according to its express terms and there is no need for construction. . . . Moreover, there is a presumption that the plain and ordinary meaning of statutory language was intended by the legislature.

*Stockwell* v. *District Court, Unit No. 6, Windham Circuit,* 143 Vt. 45, 49, 460 A.2d 466, 468 (1983) (citations omitted). We have also noted that "an amendment of the statute shows a legislative intent to change the effect of existing law." *Montgomery* v. *Brinver Corp.,* 142 Vt. 461, 464, 457 A.2d 644, 646 (1983) (citations omitted). Where the Legislature has eliminated a previous reference to malicious intent for the statutory crime of unlawful mischief, we cannot continue to require such an element to sustain a conviction.

## B.

In the alternative, the defendant argues that if the prosecution need not show malice as an essential element, the crime of

unlawful mischief is a specific intent crime, and thus the trial court erred in ruling that it was a general intent crime. The defendant does not point out, nor are we able to find in our own reading, any place in the transcript where the trial court ruled that unlawful mischief under 13 V.S.A. § 3701(c) was a general intent crime. In fact, the trial court's instructions to the jury indicate that it considered the specified offense to be a specific intent crime.

 In evaluating the elements of a specific intent crime, the required specific intent is a "conscious intent or design to act as charged." *State* v. *D'Amico*, 136 Vt. 153, 156, 385 A.2d 1082, 1084 (1978) (citations omitted). A specific intent crime includes "as an essential mental element that the act be done purposefully or knowingly." *Id.* The crime for which the defendant was convicted requires the commission of an act which "intentionally does any damage to property of any value not exceeding $250.00 . . . ." 13 V.S.A. § 3701(c). There is no requirement for the State to prove that the defendant had the intent to damage property of a municipal utility, i.e., the wire used to activate the town's fire alarm system. The State need only show that the defendant "having no right to do so or any reasonable ground to believe that he has such right" intentionally damaged property of another, and that such damages did not exceed $250.00. Thus, we find 13 V.S.A. § 3701(c) defines a specific intent crime.

## III.

Defendant's last claim of error is that the trial court erred in failing to provide the jury with a written copy of its jury instructions, or to reread its instructions in their entirety.

### A.

 During the course of its deliberations, the jury requested a written copy of the charge; the trial court denied this request. This Court has never, in either a criminal or a civil case, directly addressed the propriety of providing members of the jury with written copies of the trial court's jury instructions. V.R.C.P. 51(c), Reporter's Notes (Supp. 1984); see *Corti* v. *Lussier*, 140 Vt. 421, 423 n.1, 438 A.2d 1114, 1115 n.1 (1981) (issue not raised upon appeal and therefore not

considered; the analysis of *Corti* in the Reporter's Notes is in error). A recent amendment to V.R.C.P. 51 (V.R.C.P. 51(c), added November 9, 1982, effective February 1, 1983), gives the trial court the discretion to give each juror written copies of its instructions, but does not require that such written copies be provided. In the absence of any controlling rule to the contrary, we hold it is not error for a trial court to either provide, or fail to provide, each juror with copies of the jury instructions; such a decision is left to the discretion of the trial court.

> Discretionary rulings are not subject to review if there is a reasonable basis for the court's action. The burden of proof is on the party alleging the abuse. To support a claim of error there must be a showing that the court failed to exercise its discretion, or exercised it for reasons clearly untenable or to an extent clearly unreasonable.

*State* v. *Savo*, 141 Vt. 203, 208, 446 A.2d 786, 789 (1982) (citations omitted). In ruling upon the defense attorney's in-chambers motion to grant the jury's request to obtain written copies of the charge, the trial court indicated that the Vermont Supreme Court had spoken on the issue, and that we had stated that providing the jury with written charges was not permitted. The trial court was evidently referring to *Corti*. The trial court, misinterpreting our holding in this case, made its decision as a matter of law, and therefore failed to exercise any discretion in this matter. Thus the defendant has proven that the trial court erred in refusing, as a matter of law, to submit written charges to the jury.

A trial court's error of this sort, by itself, is not enough to require reversal upon appeal. We have held, where a jury instruction was contested in a civil case, that it is "the appellants' burden to establish that the instruction was erroneous, and that such error was prejudicial." *Corti, supra,* 140 Vt. at 424, 438 A.2d at 1116 (citations omitted). In criminal cases involving the improper admission of evidence, we have held that in order to overturn a jury verdict, the "defendant has the burden of establishing prejudice to a degree warranting reversal." *State* v. *Lupien,* 143 Vt. 378, 383, 466 A.2d 1172, 1175 (1983) (citations omitted). We now hold that this

▆▆▆▆▆▆▆▆▆▆

same requirement of prejudice to the defendant should be applied to criminal cases involving error concerning the manner of delivering written instructions to the jury. In the present case, the defendant has not shown how he has been prejudiced by the trial court's refusal to submit written charges to the jury. The defendant claims that the jury's questions concerning the unlawful mischief charge indicated a level of confusion which led them to render an unsubstantiated verdict. However, there is no evidence to show that the trial court's rereading of the charge, as requested by the jury, was not sufficient to resolve the jury's questions or uncertainty.

## B.

▆▆▆▆ The defendant also claims that the trial court erred in failing to reread its entire instructions to the jury.

> The decision of how much to elaborate on the various points contained within the original charge is left to the sound discretion of the court. . . .
> Plaintiff is entitled to a reversal only upon a showing that the court abused its discretion and that prejudice flowed from that abuse.

*Hoague* v. *Cota*, 140 Vt. 588, 594–95, 442 A.2d 1282, 1285 (1982) (citations omitted). We find that the defendant has failed, in the present case, to meet his burden to show both an abuse of discretion and prejudice on the claim of error. The trial court's decision to reread only a portion of the instructions did not constitute error.

*Affirmed.*