## State of Vermont v. Ronald W. West

[557 A.2d 873]

No. 86-212

Present: **Allen, C.J., Gibson, Dooley and Mahady, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed October 21, 1988

Motion for Reargument Denied February 14, 1989

*Jeffrey L. Amestoy, Attorney General, Elizabeth J. Grant, Assistant Attorney General,* and *Robert Katims, Legal Intern,* Montpelier, for Plaintiff-Appellee.

*Valsangiacomo, Detora, McQuesten, Rose & Grearson,* Barre, for Defendant-Appellant.

**Gibson, J.** Defendant appeals his second offense conviction of operating a motor vehicle upon a public highway while there was .10 percent or more by weight of alcohol in his blood, in violation of 23 V.S.A. § 1201(a)(1). We affirm.

Viewed in the light most favorable to the State, *State* v. *Jaramillo,* 140 Vt. 206, 208, 436 A.2d 757, 759 (1981), the record discloses the following relevant facts. Defendant, the Washington County sheriff, was involved in a two-car accident in Barre, Ver-

mont, on November 21, 1984. The investigating police officer noticed a strong odor of alcohol on defendant's breath and asked defendant to perform a series of manual dexterity tests. When defendant failed one test, the officer placed him under arrest and transported him to the police station to process him for operating a motor vehicle while under the influence of intoxicating liquor (DUI). At defendant's request, he was not handcuffed and was allowed to sit in the front seat of the cruiser during the trip to the station.

Upon arrival, defendant was placed in an interrogation cubicle constructed of temporary partitions. The cubicle was located in the main area of the Barre Police Department, near a doorway that led to the street. The officer read defendant the standard *Miranda* warnings and the rights and penalties associated with his decision whether to take a breath test, in accordance with Vermont's implied consent law, 23 V.S.A. § 1202(c). The officer, however, misinformed defendant as to the penalties for refusal to take the test. Defendant asked to speak with his attorney before deciding whether to submit to the breath test and was allowed to call his attorney. During the conversation, one police officer remained near the cubicle, and another officer paced the adjacent aisle, periodically checking on defendant. After consulting with his attorney, defendant agreed to submit to a breath test.

The officer encountered some difficulty in administering the breath test, but nonetheless obtained a sample which, when tested, demonstrated a blood-alcohol content of .18. On the basis of this test, the State added a second count to the information, charging defendant with operating a motor vehicle while there was .10 percent or more by weight of alcohol in his blood, in violation of 23 V.S.A. § 1201(a)(1).

At trial, the judge instructed the jury that in order to convict defendant on the second count, it must determine from the evidence whether defendant had .10 percent or more alcohol in his blood at the time of the accident. The trial judge further instructed the jury that it could consider the breath test result only if it found that the breath sample had been taken properly by the officer. During its deliberations, the jury asked the judge whether it could consider the test result valid if it felt the test might not have been administered properly. The judge responded that the jury should determine the validity of the test result and if it found the test to be invalid, the jury should not consider the re-

sult in coming to a verdict. The judge then reread the pertinent instructions in their entirety, over defendant's objections. The jury found defendant guilty on the second count, of violating 23 V.S.A. § 1201(a)(1).

Defendant raises three issues on appeal. First, he challenges the admissibility of the breath test. Second, defendant contends that the trial judge erred in the manner in which he responded to the jury question. Finally, defendant asserts that his right to effective assistance of counsel was abridged by the actions of the police prior to his decision to take the breath test.

## I.

Defendant alleges that the trial court erred in admitting the results of the breath test, because the officer had given the defendant erroneous information concerning the consequences of his refusal to take the test. Defendant argues that, because of this error, he did not execute a knowing waiver of his rights. As a general rule, error does not require reversal unless it is prejudicial to the defendant. *State* v. *Wetherby*, 142 Vt. 248, 250, 453 A.2d 1124, 1125 (1982). The burden of proving prejudicial error rests with the defendant. *Id.*

In the instant case, defendant conferred with his attorney after he received the erroneous information from the officer and before he made his decision to undergo a breath test. He testified that his attorney informed him of the correct penalties. Since defendant conceded that he made the decision after having been properly informed as to the consequences of refusal, and since he makes no claim to having relied on the erroneous information, we are unable to find that defendant suffered prejudice as a result of the officer's mistake. The giving of the erroneous information thus does not warrant reversal.

## II.

Defendant asserts that the trial judge confused the jury by his answer to its question concerning the weight to be given the results of a breath test that may have been administered improperly. The necessity, extent and character of supplementary instructions requested by a jury are matters that are within the sound discretion of the trial court. See *State* v. *Patch*, 145 Vt. 344, 354, 488 A.2d 755, 762 (1985) (quoting *Hoague* v. *Cota*, 140

Vt. 588, 594, 442 A.2d 1282, 1285 (1982)). We will reverse only upon a showing that the court abused its discretion and that prejudice flowed from that abuse. *Id.* An abuse of discretion will be found only upon a showing that the court failed to exercise its discretion, or that it exercised discretion for clearly untenable reasons, or to an extent that is clearly unreasonable. See *State* v. *Savo,* 141 Vt. 203, 208, 446 A.2d 786, 789 (1982).

Defendant argues that the court should have instructed the jury that if it found the breath test was administered improperly, it should not then consider the test result for any purpose. In responding to the jury's inquiry, the court stated, in essence, that the jury must find that the test was valid in order to consider the result as evidence. While the explanation was not a model of clarity, it was responsive to the question and a proper statement of the law. See *State* v. *Burack,* 133 Vt. 482, 484, 346 A.2d 192, 194 (1975) (standard of admissibility of breath tests). Therefore, we find neither abuse of discretion nor error in the court's response to the jury's question. See *Patch,* 145 Vt. at 353-54, 488 A.2d at 761-62.

## III.

■ Defendant's final argument presents a more difficult question. Defendant contends that the proximity of a police officer during his telephone conversation with his attorney infringed upon his constitutional and statutory right to effective assistance of counsel. Defendant testified that because he had not been afforded complete privacy inasmuch as an officer had remained within sight and range of hearing, he felt inhibited and unable fully to communicate with his attorney. Consequently, he argues, the attorney could not give him adequate advice as to whether he should or should not take the test.

The right to counsel granted by the Sixth and Fourteenth Amendments to the United States Constitution does not attach at the time of decision to take or refuse to take a breath test. *State* v. *Lombard,* 146 Vt. 411, 414, 505 A.2d 1182, 1184 (1985). Consequently, defendant's constitutional argument must fail.* Under Vermont's implied consent law, however, defendant does have a

---

* Defendant has raised no state constitutional arguments on appeal; therefore, we do not consider these facts under a state constitutional analysis. *State* v. *Martin,* 145 Vt. 562, 565-66 n.3, 496 A.2d 442, 445 n.3 (1985).

statutory right to consult an attorney prior to making the decision whether or not to submit to the test. 23 V.S.A. § 1202(c); *State* v. *Duff*, 136 Vt. 537, 539-40, 394 A.2d 1145, 1146 (1978).

The right to counsel means the right to the effective assistance of counsel, *In re Shuttle*, 125 Vt. 257, 258, 214 A.2d 48, 49 (1965), which, in turn, requires an opportunity to have a meaningful consultation with counsel. A defendant's right to consult with his attorney is of little value if that consultation is monitored by police, or if the unjustified presence of police has a chilling effect on the defendant's consultation. See *Lombard*, 146 Vt. at 415, 505 A.2d at 1185. This Court has not hesitated to reverse a conviction upon determining that the police abridged a defendant's right to a telephone consultation prior to deciding whether to submit to a breath test. *State* v. *Carmody*, 140 Vt. 631, 636, 442 A.2d 1292, 1295 (1982). Also, upon a showing that police intruded on a defendant's right to consult with counsel, we vacated a court order directing suspension of driving privileges for a defendant's refusal to take a breath test. *Pfeil* v. *Rutland District Court*, 147 Vt. 305, 309-10, 515 A.2d 1052, 1056 (1986).

A defendant's right to a meaningful consultation with counsel contemplates a reasonable degree of privacy. See *Farrell* v. *Municipality of Anchorage*, 682 P.2d 1128, 1130 (Alaska Ct. App. 1984). That privacy cannot always be absolute, however. *Pfeil*, 147 Vt. at 309, 515 A.2d at 1055. If an arrestee presents a security risk, the proximity of an officer may be justified. *Lombard*, 146 Vt. at 415, 505 A.2d at 1184-85. And if there is no evidence to suggest that the arrestee felt inhibited, coerced or restricted by the presence of a police officer during his conversation with counsel, there may be no violation of the statutory right to counsel. *Pfeil*, 147 Vt. at 309, 515 A.2d at 1055. Thus, the degree of privacy an arrestee should be afforded to communicate with counsel must be determined by balancing the individual's right to consult privately with counsel against society's interest in obtaining or preserving important evidence. See *Farrell*, 682 P.2d at 1130; see also *State* v. *Welch*, 135 Vt. 316, 322, 376 A.2d 351, 355 (1977)) ("police officials may not, without reason, deny access between an accused and his lawyer, when such access is requested and is readily available and will not interfere with investigation of the matter at hand."). The statutory mandate is fulfilled when reasonable efforts are made to allow an arrestee to consult privately

with counsel. What is reasonable will depend upon the circumstances of the individual case.

Although the police had some justifiable security concerns, their conduct in the instant case approaches an unacceptable infringement on the defendant's right to a meaningful consultation with counsel. See *Lombard*, 146 Vt. at 415, 505 A.2d at 1185. In *Lombard*, the defendant's telephone conversation with his attorney took place at an outdoor public telephone booth. That situation posed a security risk which warranted the officer's presence. Here, defendant posed no such risk. Although the telephone call was made from a cubicle located near an exit to the street, defendant was never handcuffed, and he had been allowed to ride in the front seat of the cruiser to the police station. In *Lombard*, there was no evidence that the defendant felt inhibited in his conversation by the officer's presence. *Id.* Defendant here testified that he did feel inhibited from discussing the events with his attorney.

In considering this issue, however, we apply an objective test which focuses on whether, under the totality of the circumstances, reasonable efforts were made to afford defendant an opportunity to communicate privately with counsel. Neither the subjective beliefs of the defendant nor those of the police are determinative; rather, the test focuses on the nature of the physical setting within which the events take place and, in order to avoid reliance on after-the-fact, self-serving declarations of either the police or defendant, how a reasonable person in the defendant's position would have understood his situation. See *Berkemer* v. *McCarty*, 468 U.S. 420, 442 (1984); *State* v. *Willis*, 145 Vt. 459, 475, 494 A.2d 108, 117 (1985).

In the instant case, defendant testified that he did not request greater privacy because he thought it in his best interest to cooperate with the officers. Yet, defendant had initially asked the officer at the scene not to handcuff him and not to place him in the back seat of the cruiser. Defendant also testified that he knew from his law enforcement experience that he could have asked for more privacy had he so desired. Further, there is no evidence that the police attempted to eavesdrop or that they used information obtained from that conversation to defendant's detriment, nor is there any showing by defendant as to what else he might have desired to ask his attorney had there been no officers nearby.

It is also relevant to note that although there was no indication that defendant might flee, the cubicle from which defendant made his telephone call was located near a door to the outside, justifying the proximity of the police officers. Under the circumstances herein, defendant's contention that he was denied the effective assistance of counsel is unsupported by the evidence. Applying the requisite objective test, we agree with the trial court that reasonable efforts were made to afford defendant a private conversation and that defendant was not denied his statutory right to counsel.

*Affirmed.*

**Mahady, J.,** dissenting. I respectfully dissent from the holding in Part III of the majority's opinion. Under the facts of this case, defendant was denied meaningful communication with his attorney, and therefore was denied his statutory right to counsel.

The majority's adoption of an objective test in determining whether a defendant being processed for DUI was able to communicate privately with counsel serves merely to obscure what has been up until now a clear rule: did the arresting officers make reasonable efforts to afford defendant an opportunity to communicate privately with counsel. See *Pfeil* v. *Rutland District Court,* 147 Vt. 305, 309, 515 A.2d 1052, 1055 (1986). I believe the facts indicate that in this case the police did not make this effort.

There are three cubicles in a back room used for processing arrestees at the Barre police station. These cubicles consist of three metal partitions that are about five feet high and a half inch thick. Both of the officers who processed defendant for DUI testified that defendant was allowed to talk to an attorney on a phone located in one of the cubicles. While waiting for defendant to finish his conversation with his attorney, one officer sat in a cubicle adjacent to defendant and the other paced back and forth in front of the cubicles to keep an eye on defendant, occasionally sticking his head in to see if he had finished his conversation. Both officers said they could hear his conversation.

The officer who paced in front of the cubicles testified on cross-examination that he could have observed defendant from down the hall without having to be within earshot of his conversation. He also testified that defendant at no time presented a security risk. There appeared to be no purpose served by the other of-

ficer's presence in the cubicle adjacent to defendant. Defendant testified that he felt that because of the officer's presence he could not speak candidly with his attorney. When speaking with his attorney he declined to give a full account of what happened prior to the car accident and how much he had to drink. He said he did not want the officers to overhear these details for fear that they would assume that he was guilty of driving while intoxicated. He said he did not ask for more privacy because he did not want to appear uncooperative.

As the majority points out, this case is distinguishable from *State* v. *Lombard*, 146 Vt. 411, 415, 505 A.2d 1182, 1185 (1985). The defendant in *Lombard* had been apprehended after leaving the scene of an accident and made his phone call to his attorney from a public phone booth. In that case defendant posed a security risk for the arresting officer, who stood nearby and overheard defendant's conversation with his attorney. Here, as the majority acknowledges, defendant posed no such risk. Unlike the setting in *Lombard*, police stations can be arranged so as to provide a place where defendants can talk privately and not pose a security risk. Furthermore, again unlike this case, there was no evidence presented in *Lombard* that defendant felt inhibited by the officer's presence. Despite our holding in *Lombard* that there had not been a violation of defendant's right to consult an attorney, we warned that:

> Although we do not find a violation here, we feel constrained to add that we in no way sanction or approve of police conduct which effectively prevents defendants from freely communicating with their attorneys in private. Defendants must be afforded a meaningful opportunity to consult with counsel before submitting to a breath test. Police practices which unjustifiably interfere with this right cannot be tolerated.

*Id.* at 415, 505 A.2d at 1185. *Lombard* thus suggests a result opposite from that reached by the majority.

Until today, and for good reason, the test had not been "how a reasonable person in the defendant's position would have understood his situation." *State* v. *West*, 151 Vt. 140, 145, 557 A.2d 873, 877 (1988). This newly-announced test runs contrary to our holding in *State* v. *Carmody*, 140 Vt. 631, 442 A.2d 1292 (1982). In that case, we wrote:

> To allow unauthorized police action to cloud the otherwise voluntary nature of the decision to refuse testing would be inconsistent with [the legislature's] concern. Since the impact of actions seen as coercive or restrictive is almost impossible to measure after the fact, . . . we are compelled to the position that a mere demonstration that such actions occurred creates a flaw in the procedure.

*Id.* at 636, 442 A.2d at 1295; see also *Pfeil*, 147 Vt. at 309-10, 515 A.2d at 1056. The invasion of defendant's privacy demonstrated by the evidence in this case "creates a flaw in the procedure" of sufficient dimension to warrant reversal.

The *Carmody* rule, like other rules directed at police conduct, see, e.g., *Miranda* v. *Arizona*, 384 U.S. 436, 465 (1966), is intended as a "protective device" aimed at guiding police action. See also *Fare* v. *Michael C.*, 442 U.S. 707, 718 (1979) ("*Miranda's* holding has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation . . . ."). The majority's test, in contrast, has the unfortunate effect of making clearly impermissible police practices permissible, depending on how they might have been perceived by the defendant. The decision today weakens significantly the underlying function of the rule, and, I fear, opens the door for its evasion.

In support of its decision to apply an objective test, the majority cites *Berkemer* v. *McCarty*, 468 U.S. 420 (1984), and *State* v. *Willis*, 145 Vt. 459, 494 A.2d 108 (1985). Those cases employ an objective test to determine whether a defendant is in custody for *Miranda* purposes. The test concerns a threshold issue: a suspect's *Miranda* rights will be triggered if he or she is determined to be in custody. As this Court stated in *Willis*, "courts should make an objective inquiry into the totality of the circumstances to determine if a reasonable person would believe he or she were free to leave or to refuse to answer police questioning." 145 Vt. at 475, 494 A.2d at 117.

The matter at issue here is entirely different. Defendant's rights under the statute had already been triggered, and the police knew this. Their duty was to honor that right. A court reviewing their conduct should ask whether the police did or did not honor the defendant's right to consult in private with his attorney. See *Pfeil*, 147 Vt. at 309, 515 A.2d at 1055 ("The statutory

right to counsel that attaches prior to testing includes the right to communicate freely with an attorney in private."). There is no need to resort to an objective test to make this determination. The focus should be on what the *police* did, and whether any infringement of defendant's right was justified by the exigencies of the moment.

I also fail to see why the majority insists on adopting a balancing approach: "[T]he degree of privacy an arrestee should be afforded to communicate with counsel must be determined by balancing the individual's right to consult privately with counsel against society's interest in obtaining or preserving important evidence." *West*, 151 Vt. at 144, 557 A.2d at 876. The Legislature, however, has *already* made the balance, and concluded that the right to counsel in these circumstances tips the scales. See *Carmody*, 140 Vt. at 636, 442 A.2d at 1295 ("The legislature specifically demonstrated its concern that any refusal to be tested not be lightly decided, by providing for counsel and for time for reflection."). The statutory language is unequivocal:

> A person who is requested by a law enforcement officer to submit to a test which is intended to be introduced into evidence, under this section shall have the right to consult an attorney prior to deciding whether or not to submit to such a test.

23 V.S.A. § 1202(c). When the Legislature wished to weigh in "society's interest," it did so expressly. Thus the statute requires that the person "decide within a reasonable time, but no later than thirty minutes from the time of the initial attempt to contact the attorney, whether or not to submit to the evidentiary test." *Id.* No other constraints on the right to counsel are contained in the statute, and I do not see why we should read them in.

I would not be misunderstood to suggest that the right is absolute. Overriding circumstances may require some intrusion on a suspect's private consultation with counsel,\* such as occurred in *Lombard*. Such overriding circumstances, however, simply do not obtain in this case.

---

\* To allow for overriding circumstances is not to invoke, through a side door, the majority's balancing test. The former recognizes that there is a presumption that must be overcome if the police wish to intrude on a defendant's communications with counsel. The balance test recognizes no presumption.

Finally, "[a] meaningful exercise of the defendant's right to counsel should not depend upon whether a defendant requests permission to consult privately with his lawyer." *State* v. *Beaupre*, 123 N.H. 155, 159, 459 A.2d 233, 236 (1983). It should not be defendant's burden to assert his right to private consultation with his attorney. Cf. *Miranda*, 384 U.S. at 468 (Court "will not pause to inquire in individual cases whether the defendant was aware of his rights . . . ."); *State* v. *Normandy*, 143 Vt. 383, 387, 465 A.2d 1358, 1360 (1983) (officers required to make defendant aware of his right to an independent blood test). Defendant's awareness that he could have asked for more privacy may go to his credibility as to his feeling inhibited by the officers' presence, but it should be irrelevant as to whether the officers in question responded appropriately or not.

I conclude that because defendant was denied meaningful communication with his attorney, he should not be bound by his decision to take the breath test. I would reverse and remand the case with a mandate that the result of the breath test be suppressed. See *State* v. *Duff*, 136 Vt. 537, 540, 394 A.2d 1145, 1146 (1978).