## Davey Oil Co. v. State of Vermont

[508 A.2d 717]

No. 85-057

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed March 14, 1986

*Robert E. Woolmington* of *Witten & Carter, P.C.*, Bennington, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Andrew M. Eschen* and *Thomas R. Viall*, Assistant Attorneys General, Montpelier, for Defendant-Appellee.

**Hayes, J.** This is an appeal by the taxpayer, Davey Oil Company (Company) from a superior court judgment affirming the Vermont Department of Motor Vehicles' authority to assess a diesel fuel tax on all pump sales by the Company, including both sales to diesel fuel users and home heating oil users. We affirm in part and reverse in part.

Davey Oil Company sold fuel to both home heating customers and motor vehicle operators. It maintained separate pumps for dispensing fuel into motor vehicle fuel tanks and separate pumps for heating oil customers. It did not collect the diesel fuel tax on sales of home heating oil.

The first diesel fuel tax in Vermont was adopted in 1982 and codified in 23 V.S.A. §§ 3001-3026. As originally adopted, § 3003(b)(2) stated that:

> the dealer who also sells fuel as home heating oil or is a *user* who has been certified exempt by the commissioner shall collect the tax when he sells or delivers the fuel from the pump and shall pay the tax to the commissioner as provided by section 3004; . . . . (emphasis added).

A "user" is a person who uses fuel to propel a motor vehicle. 23 V.S.A. § 3002(10). The term does not include purchasers of home heating oil.

On October 28, 1982, the Department of Motor Vehicles adopted a rule, under 23 V.S.A. § 3003(b)(2), which stated in relevant part:

> A dealer who also sells fuel as home heating oil . . . will collect the tax due on all fuel delivered through its pumps at the time of delivery . . . .

On October 6, 1983, a Department of Motor Vehicles examiner directed the Company to begin collecting the state diesel fuel tax "on all fuel deliveries through its pumps" in accordance with the language of the regulation, whether or not the Company believed the fuel was to be used as home heating oil. The Company appealed to the Commissioner on grounds that the statute did not authorize the Department to issue a regulation conclusively

presuming all sales at the pump to be sales for motor vehicle use. On February 29, 1984, in the midst of the administrative proceeding before the Department on this appeal, the General Assembly amended § 3003(b)(2) to tax all fuel pump sales. That section now states that:

> the dealer who also sells fuel as home heating oil or is a user who has been certified exempt by the commissioner shall collect the tax when he sells or delivers the fuel from the pump, *or from any other method of delivery except from a home heating oil delivery truck* which has been registered pursuant to section 367 of this title, and shall pay the tax to the commissioner as provided by section 3004; . . . . (emphasis added).

On April 19, 1984 the hearing officer decided the Company's appeal in favor of the Department of Motor Vehicles, based on the statute and regulation as they existed prior to the 1984 amendment of 23 V.S.A. § 3003(b)(2). The Department thereafter continued to assess the Company for all fuel sales from its pump, irrespective of the use claimed by the customer.

The Company raises two issues on appeal. It questions the right of the Department to tax sales from the pump before the amendment of § 3003(b)(2) on February 29, 1984, and separately questions the power of the Department to assess the tax for periods after the amendment of that section, on grounds that even the amended section does not authorize such a result. The Department asserts the right to compel the Company to have collected the diesel fuel tax during all times after October 6, 1983, arguing that the regulation promulgated on October 28, 1982 was consistent with the original language of § 3003(b)(2), and that the February 29, 1984 amendment to the statute merely confirmed what the law was prior to that time. We agree with the Company as to the period prior to the February 29, 1984 amendment of the statute, and, as to the period thereafter, we agree with the Department.

■ The diesel fuel tax statute, as originally adopted, taxed "users" within the meaning of 23 V.S.A. § 3002(10)—essentially anyone using diesel fuel in a motor vehicle. Given this clear scheme, the language in § 3003(b)(2), directing the taxpayer to "collect the tax when he sells or delivers the fuel from the pump," does not automatically impose a diesel fuel tax on all sales from a

pump but rather directs the taxpayer to collect *whatever tax is due* "when he sells or delivers the fuel from the pump." Under the overall scheme of the statute as originally enacted, no tax was due or payable if a pump sale was to a heating oil customer. Section 3003(b) simply identifies the point in the stream of distribution from the distributor to the ultimate user at which any tax due is collectible. It is not intended to accomplish what was later done by statutory amendment—to presume that all sales from the pump are sales to "users," as defined in the statute.

This reading of § 3003(b)(2) is buttressed by the language of 23 V.S.A. § 3004(a), which restates much of what is covered in § 3003(b)(2) but more clearly distinguishes between sales to "users," which are taxable, and sales to heating oil purchasers. Section 3004(a) states:

> A dealer, who also sells home heating oil or is a user who has been certified exempt from the tax by the commissioner, who sells or delivers fuel *shall collect the tax from the user* at the time of sale. . . . (emphasis added).

The amendment of § 3003(b)(2) may have reflected the legislature's belief that the original section allowed purchasers to evade the tax by buying fuel at the pump claiming heating oil use, and then transferring the fuel to a motor vehicle. It is wishful thinking by the Department, however, to contend that the statute, as originally enacted, was intended to prevent this possible evasion. The Department cites § 3020 as supporting its position that all sales from the pump were to be taxed from the first passage of the diesel fuel tax, since § 3020 provides a refund mechanism for persons who must pay the diesel fuel tax but are not "users," as defined in the statute. As originally adopted, however, § 3020 applied only to certain "licensed users," excluding from the class of persons eligible for refund persons who might buy fuel from the pump for heating oil use. Therefore, § 3020 does not lend weight to the Department's reading of the statute. Section 3020 was amended to substitute "person" for "licensed user," effective April 21, 1983, prior to the date on which the Department directed the Company to pay the taxes here at issue, but § 3003(b)(2) was not amended until February 29, 1984. We cannot accept the proposition that the 1983 amendment of § 3020, which can be interpreted to support the Department's construction of § 3003(b)(2), should be read as sufficient to accomplish what the

amendment of § 3003(b)(2) expressly did directly in 1984. Thus, we hold that no tax was properly assessed to the Company prior to February 29, 1984.

After the amendment of § 3003(b)(2), the Company was properly directed to collect the diesel tax on all sales at the pump, whether or not destined for home heating purposes. The Company contends that the reason for the amendment was not to tax all pump sales of dual-purpose dealers, but simply to close the loophole that allowed dealers who used gravity feed devices, rather than pumps, to avoid taxation. We disagree. It is an elementary rule of statutory construction that when the plain meaning of a statute is clear, we need not resort to a study of legislative history to determine intent. *State v. Patch*, 145 Vt. 344, 351, 488 A.2d 755, 760 (1985).

*The judgment of the Bennington Superior Court is reversed as to the tax on diesel fuel sold or delivered by Davey Oil Company from its pumps before February 29, 1984, and affirmed as to such tax after that date.*