# In re Kelscot, Ltd., d/b/a R. C. Fisher, Inc.

[568 A.2d 378]

No. 87-343

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed September 29, 1989

*William M. McCarty, Jr.*, and *Thomas Ryan Paul* of *Mc-Carty Law Offices*, Brattleboro, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Thomas A. Mc-Cormick*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Morse, J.** Kelscot, Ltd., appeals a determination by the Vermont Department of Motor Vehicles (Department) that Kelscot

owes the State unpaid gasoline taxes, penalties and interest in the amount of $294,611.72. We affirm.

Beginning in 1972, Kelscot, a Vermont corporation, purchased gasoline from Mobil Corporation for distribution to customers in Windham County. During the relevant period of the Department's assessment, December 23, 1982 to December 19, 1986, Kelscot purchased gasoline at Mobil's Springfield, Massachusetts, plant and transported it to its facilities in Brattleboro, Vermont. Prior to December 1982, Mobil collected a tax of $.11 per gallon of gasoline from Kelscot and remitted the taxes collected to the State of Vermont. In December of 1982, however, Mobil changed its procedures and remitted the taxes collected from Kelscot to Massachusetts instead of Vermont. Neither Kelscot nor the State of Vermont became aware of this change until Kelscot was audited by the Department in December of 1986.

## I.

### *Jurisdiction*

■ This appeal was brought under the Administrative Procedure Act (APA), which provides for direct appeal to the Supreme Court of final decisions in "contested cases" before administrative agencies. 3 V.S.A. § 815(a). The State challenges our authority to hear the appeal, however, arguing that jurisdiction of an appeal from a Department of Motor Vehicles decision lies in the first instance in the superior court. It premises its position on 3 V.S.A. § 816(b), which states:

> Sections 809–814 of this title [setting out procedures for adjudicating contested cases] shall not apply to any and all acts, decisions, findings or determinations by the commissioner of motor vehicles or his duly authorized agents or to any and all procedures or hearings before and by him or his agents . . . .

Notably, § 816(b) does *not* exempt Department of Motor Vehicles decisions from the appellate process set out in § 815(a). That is, appeals of decisions in contested cases, even those before the Department of Motor Vehicles, must be made directly to the Supreme Court.

The APA defines "contested case" as follows:

> "contested case" means a proceeding, including but not restricted to rate-making and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing.

3 V.S.A. § 801(b)(2). The instant case was contested under this definition because the legal rights of Kelscot were determined by the Department;[1], as required by law, after a hearing. 23 V.S.A. § 3112. The applicable appellate route is therefore that provided in 3 V.S.A. § 815(a). Had the legislature intended to foreclose appeals of the Department's contested cases to this Court, it would have included § 815(a) among § 816(b)'s exempted provisions. This appeal is jurisdictionally proper.

## II.

### Department's Authority

Not to be outdone, Kelscot challenges the Department's authority to make assessments of gasoline taxes. Kelscot claims that the hearing before the Department was an exercise of quasi-judicial authority, a function properly vested not in the Department but in the seven-member Transportation Board, an arm of the Agency of Transportation charged with "policy-making, regulatory and *quasi-judicial* functions relating to transportation." 19 V.S.A. § 5(a) (emphasis added).[2]

In 1986, however, the legislature enacted a law vesting in the Commissioner of Motor Vehicles the power to make gasoline tax assessments. As provided in 23 V.S.A. § 3111:

---

[1] A department is defined as an agency. 3 V.S.A. § 801(b)(1).

[2] The provision was formerly codifed at 3 V.S.A. § 3104. In 1986, it was recodified in Title 19, see 1985, No. 269 (Adj. Sess.), § 1, but the language quoted in the text dates from a 1978 amendment. 1977, No. 263 (Adj. Sess.), § 4.

Title 19 provides for one exception to the general grant of quasi-judicial authority to the Transportation Board. Section 5(b) states:

> Notwithstanding subsection (a) of this section, the duties and responsibilities of the commissioner of motor vehicles in Title 23 with regard to the suspension and revocation of licenses, including all quasi-judicial powers, shall continue to be vested in that individual.

This subsection is not applicable to the facts in this case.

> If a distributor neglects or refuses to file any report required by this chapter, the commissioner shall make an estimate of the tax due, based upon information available to the commissioner, for the period for which the distributor failed to make the report, and shall assess the tax due from the licensee, adding to the amount thus determined a penalty of 50 percent. . . .

See also 23 V.S.A. §§ 3110, 3112.[3]

■■ Absent any indication to the contrary, when two statutes bearing on the same subject matter are in conflict, the more specific provision prevails. *State v. Webb*, 151 Vt. 200, 201, 559 A.2d 658, 659 (1989); *State v. Teachout*, 142 Vt. 69, 73, 451 A.2d 819, 820–21 (1982). Here, the provision in Title 23 is the more specific; consequently it controls the instant dispute.[4] Ju-

---

[3] These provisions derive from 1985, No. 207 (Adj. Sess.), § 1, which transferred authority for the collection of gasoline taxes from the Tax Department to the Motor Vehicles Department. The former law was codified at 32 V.S.A. § 8801 et seq. There is no indication that the legislature (or the House Committee on Ways and Means, which proposed the language in the new provisions) was aware of or considered the potential conflict with 19 V.S.A. § 5(a) or its predecessor.

[4] The recodification of the Transportation Board statute into Title 19, with new language broadening the Board's jurisdiction, was signed into law on June 6, 1986, four days after the Governor signed the gasoline tax bill. The amendment did not, of course, expressly supersede the new gasoline tax law, which vests jurisdiction over the specific matter of gasoline tax assessments in the Commissioner, nor did it contain any language, such as the phrase "notwithstanding other provisions of law," that might indicate an intent to supersede it. Even if § 5(a) did contain such language, its intent would be ambiguous since the legislature took the affirmative step of enacting the gasoline tax law in the *same* legislative session. In any event, the fact that one bill was signed by the Governor four days after the other is fortuitous. Both bills were committed to the House Committee on Transportation. The recodification bill, House Bill 409, was given to that committee on March 29, 1985; the gasoline tax bill, House Bill 391, was given to the committee on March 1, 1985. H.B. 409 passed the House on May 3, 1985; H.B. 391 passed the House almost a *year later*, on April 11, 1986. The Senate returned H.B. 409 only on April 28, 1986, while it returned H.B. 391 on April 30, 1986. In the end, the Governor signed the latter first, but it is clear that the former cannot be characterized as "a more recent statute" in any meaningful sense. Accordingly, there is no applicable presumption here that a more recent statute controls over a conflicting earlier statute.

risdiction, therefore, was properly vested in the Department of Motor Vehicles.[5]

## III.

### The Merits

Kelscot's principal point is that Mobil was a de facto agent of the State of Vermont and, therefore, payments of taxes to Mobil are payments to the State under the principles of agency law. Acknowledging that there is no written agency agreement, Kelscot maintains that one can be inferred from the conduct of the parties. According to Kelscot, an agency relationship was established from the fact that Kelscot paid Mobil the taxes owed Vermont and Mobil remitted them to Vermont over a ten-year period (1972–82). Kelscot relies on *Rule v. New Hampshire-Vermont Health Service*, 144 Vt. 323, 477 A.2d 622 (1984).

*Rule* is inapposite. There, this Court upheld the trial court's conclusion that an agency relationship existed between a health care insurer and a trade association because the findings " 'fairly and reasonably' " supported this conclusion. *Id.* at 326, 477 A.2d at 624. Unlike Mobil in this case, the trade association in *Rule* acted as an administrator for the collection of premiums for the insurer from members of the association and acted at the direction and control of the insurer. *Id.* at 326–27, 477 A.2d at 624. Here, Mobil merely passed along the taxes to the State. The evidence fairly and reasonably supported the Department's conclusion that Mobil was not the State's agent in these circumstances.

Kelscot's final claim of error is that the Department did not have sufficient information to conclude that Kelscot sold any gasoline. Evidence showed only that Kelscot *bought* 1,695,729 gallons of gasoline over the applicable period. This claim has little merit. Absent a showing to the contrary, it is

[5] Kelscot further argues that the Department's hearing examiner should have reported his findings to the Transportation Board pursuant to 19 V.S.A. § 5(c), which requires that hearing examiners appointed by the Board report their findings to the Board. Since the hearing was not conducted under authority of the Board, however, the hearing examiner in this case was under no obligation to report to the Board.

reasonable to infer that the quantity purchased was ultimately sold. In any event, the hearing below was conducted without any dispute being raised as to the basis for computing the tax. The record is sufficient to support the Department's calculation of the taxes owing.

*Affirmed.*

**Dooley, J.,** dissenting. I believe that 19 V.S.A. § 5 controls this dispute and, as a result, the jurisdiction nominally placed in the Commissioner of Motor Vehicles (Commissioner) was transferred to the Transportation Board (Board). My primary reason for reaching this conclusion is a 1986 amendment to the statutory authority of the Board, not mentioned or discussed by the majority.

Prior to July 1, 1986, the quasi-judicial powers of the Transportation Board were provided for in 3 V.S.A. § 3104.[1] The Board had been created in 1975 to bring together in one place the quasi-judicial, policy-making and regulatory powers over transportation. Accordingly, § 3104(a) provided that all quasi-judicial (and other) functions relating to transportation exercised by three specified boards were "transferred to the transportation board as their successor." 1975, No. 120, § 1, as amended by 1977, No. 263 (Adj. Sess.), § 4. The three specified boards were the Highway Board, the Aeronautics Board and the Public Service Board.[2] Subsection (b) of § 3104 specified that notwithstanding (a), the duties and responsibilities of the Commissioner of Motor Vehicles "with regard to the suspension and revocation of licenses, including all quasi-judicial powers" continued in that Commissioner.[3]

---

[1] This section was added in 1975 when the Vermont Agency of Transportation and the Vermont Transportation Board were created for the first time as a "super-agency" for transportation matters. See 1975, No. 120, § 1. See also 1977, No. 263 (Adj. Sess.), §§ 1–3.

[2] The Public-Service Board retained its utility jurisdiction.

[3] The phrase "including all quasi-judicial powers" was inserted in 1978 by 1977, No. 263 (Adj. Sess.), § 4. It clearly applies to quasi-judicial powers related to suspension and revocation of licenses. It does not apply to the quasi-judicial powers related to gasoline tax assessments.

Kelscot argues from subsection (b) that the Legislature must have intended to transfer the quasi-judicial powers of the Commissioner of Motor Vehicles, *other than those involving the suspension and revocation of licenses*, to the Transportation Board; otherwise, § 3104(b) was wholly superfluous. The Court labels § 3104(b) as "not applicable to the facts in this case." I agree with the Court to the extent they hold that (b) alone can't shift jurisdiction from the Commissioner to the Board. The shift of jurisdiction must be found in (a) somewhere; however, it is just not there because the Commissioner is not the Highway Board, the Aeronautics Board or the Public Service Board.

I don't believe, however, that the language of § 3104(b) is wholly irrelevant to this case, even if it is superfluous as Kelscot suggests. It shows that the draftsperson of § 3104 thought there was a shift of some of the jurisdiction of the Commissioner to the Board. This intent is significant when we look at the 1986 amendment.

In the 1986 session, the Legislature transferred the power to make gasoline tax assessments from the Commissioner of Taxes to the Commissioner of Motor Vehicles. 1985, No. 207 (Adj. Sess.), § 1. That transfer bill was signed into law on June 2, 1986. 1986 House Jour. 1131.

A few days thereafter, on June 6, 1986, Act No. 269 was signed into law. 1986 House Jour. 1134. Section 1 moved, and amended, the "Charter" of the Transportation Board. Rather than specifying that the Transportation Board has the power and authority of certain formerly existing boards, the new section, 19 V.S.A. § 5, is more expansive. It states, simply: "(a) [t]he policy-making, regulatory and quasi-judicial functions relating to transportation shall be vested in the transportation board." The former subsection (b) of 3 V.S.A. § 3104 is now included verbatim in subsection (b) of the new section, and § 3104 has been repealed. 1985, No. 269 (Adj. Sess.), § 2(4). Subsection (b) now makes sense because the grant of power to the Board is not limited to powers formerly held by specified boards. See *State v. Kreth*, 150 Vt. 406, 409, 553 A.2d 554, 556 (1988) (part of statute should not be construed as inoperative or surplusage). The grant of power in § 19 V.S.A. § 5(a) is broad

enough to encompass former powers of the Commissioner of Motor Vehicles and clearly does so, except where subsection (b) leaves the responsibility with that Commissioner. We must assume that the amendment of the language from the former 3 V.S.A. § 3104(a) to the current 19 V.S.A. § 5(a) was intended to bring about a change in the law. See *State v. Patch*, 145 Vt. 344, 351, 488 A.2d 755, 760 (1985). Since 19 V.S.A. § 5 was enacted after 23 V.S.A. § 3112 (the hearing provision of 1986, No. 207), 19 V.S.A. § 5 controls and vests jurisdiction in the Board. See *Looker v. City of Rutland*, 144 Vt. 344, 347, 476 A.2d 141, 143 (1984).

The Court's response to this analysis, as I understand it, is illogical. The Court's position is that 23 V.S.A. § 3112 is "more specific" than 19 V.S.A. § 5(a) and, therefore, must control because the statutes are "in conflict." This kind of analysis would prevent any kind of governmental reorganization unless the Legislature completed the massive job of specifically changing each statute that granted a power of responsibility to a specific officer.[4] The statute-by-statute specification of power and responsibility will always be more specific than the general transfer of authority to another agency or authority. I can understand that argument when it is applied to enactments following the general reallocation of power and authority; that is, if 23 V.S.A. § 3112 had been enacted after 19 V.S.A. § 5, the Court would be correct. I cannot accept the argument when the reorganization statute is the later in time. In other words, the statutory construction issue should be controlled by the "last in time" rule, not by the "specific controls the general" rule.

Although it cannot be determinative of the statutory construction question, we should not ignore the more desirable assignment of quasi-judicial power that a finding of Transportation Board jurisdiction will bring about. We have, in other administrative hearing processes, "emphasized the necessity for

---

[4] Ironically, the two statutes involved here are both implementing governmental reorganizations. The difference is that 23 V.S.A. § 3112 is specific because it was enacted to shift a narrow responsibility from the Commissioner of Taxes to the Commissioner of Motor Vehicles.

impartiality and the avoidance of even the appearance of partiality." *In re State Aid Highway No. 1, Peru, Vt.*, 133 Vt. 4, 9–10, 328 A.2d 667, 670 (1974). There is nothing in this record to suggest that the Commissioner and the Department acted other than impartially and fairly. To the extent that the statute makes the Commissioner or his designee a judge of his own assessment, it creates an appearance of a closed mind when the Commissioner judges his own assessment. Adjudication by the Transportation Board, made up of independent citizens appointed by the Governor, eliminates any question of an appearance of partiality.

I would reverse for hearing before the Transportation Board.